James B. TAYLOR and Tevis Bennett
Taylor, Appellants,

v.

Ellis CAMPBELL, Jr., District Director of
Internal Revenue, Appellee.

No. 20677.

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1964.

Rehearing Denied Sept. 21, 1964.

Ethan B. Stroud, Jack W. Hawkins, Dallas, Tex., for appellants.

C. Moxley Featherston, Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert A. Anderson, Alan D. Pekelner, C. Guy Tadlock, Dept. of Justice, Washington D. C., H. Barefoot Sanders, Jr., U. S. Atty., Joseph

McElroy, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

HUTCHESON, Circuit Judge.

This appeal by taxpayer [1] arises out of a claim for refund in the amount of $3,-555.11 plus interest for the taxable years 1957 through 1960. We are required to determine the deductibility under Sections 215 [2] and 71 [3] of the Internal Revenue Code of 1954 of certain payments made by taxpayer to his ex-wife pursuant to a written agreement and a divorce decree.

The district court found as a matter of fact and law that the payments in issue were made by taxpayer in exchange for the relinquishment of Margaret Taylor's property rights and not for her support. We disagree.

Taxpayer and Margaret Taylor were married in 1930. On November 28, 1950, after a period of marital discord, they entered into what they called a property settlement agreement.[4] On December 1,

---

1. Taxpayer's present wife, Tevis Bennett Taylor, is a named party here only because she filed a joint return with her husband. This opinion will refer to James B. Taylor as taxpayer.

2. Alimony, etc., payments.
   "(a) General rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income."

3. Alimony and separate maintenance payments.
   "(a) General rule.—
   "(1) Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or

attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.
   *      *      *      *      *
   "(c) Principal sum paid in installments.—
   "(1) General rule.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments."

4. The agreement in part is as follows:
   "That Margaret Taylor and James B. Taylor hereby mutually agree to the provisions of the following contract looking toward the granting of a divorce between them, mutually agreeing that this instrument is intended to be and is a full final and complete settlement, division, partition and distribution between them of the community property, community proper-

1950, they were divorced. The decree incorporated and approved as full, fair and equitable the property settlement agreement.

ty rights, separate property and an accounting as between them so that its provisions shall become final and conclusive upon the granting of a divorce to the said Margaret Taylor in the suit above referred to.

I.

"The said Margaret Taylor realizes and is fully informed that under the laws of Texas subsequent to divorce she has no right to support but only the right of accounting as to her property rights, separate and community, and this agreement is not intended to provide for any support subsequent to divorce.

II.

"The various sums hereinafter set up to be paid by James B. Taylor have been calculated as proper sums to be paid net of any taxes against Margaret Taylor. If taxes are assessed against Margaret Taylor by virtue of any such sums so paid, such sums in payment shall be increased to the extent necessary to render the stated sums to be net amounts.

III.

"Margaret Taylor shall take, have and receive, and does by this instrument take, have and receive, the following described and listed property and contractual rights:

"A. All of the household goods, furniture, and furnishings, now in her possession, and located at 6806 Prosper Street in the City of Dallas, Texas, where she is now residing.

"B. That certain 1948 Ford convertible automobile, Motor No. 899A–2248364, free and clear of all liens and encumbrances, and immediately after the granting of the divorce in the above styled cause, James B. Taylor will cause to be transferred to Margaret Taylor the certificate of title in and to said automobile, free and clear of all liens and encumbrances.

"C. Margaret Taylor shall have, receive, and retain all clothes, personal effects, and jewelry now in her possession.

"D. Margaret Taylor shall have and receive, and James B. Taylor does contract to pay to Margaret Taylor, the sum of $200.00 per month in the following manner and for the period of time hereinafter set out as follows:

"James B. Taylor will pay, and does hereby contract to pay, to Margaret Taylor the sum of $200 per month, the first payment to be made on the 1st day of December, 1950, and a like payment to be made on the 1st day of each month thereafter, Provided, however, that:

"(1) Such payments shall terminate upon the death of Margaret Taylor occurring subsequent to November 1, 1954, and no further payments shall be made or required to be made from and after the date of the death of Margaret Taylor after November 1, 1954, except with respect to such payments as may accrue up to November 1, 1954, or up to the time of the death of Margaret Taylor after November 1, 1954.

"(2) Such payments shall terminate upon the remarriage of Margaret Taylor except as to payments which mature up to November 1, 1954. Whenever under this paragraph payments cease, such payments shall not be revived even if Margaret Taylor again becomes single.

"(3) In the event of the death of James B. Taylor while he is still obligated to make such $200.00 monthly payments, there is being contemporaneously executed a trust instrument called the Margaret Taylor Trust in which the Mercantile National Bank at Dallas is Trustee. Assuming the existence of such trust at the date of the death of James B. Taylor, the rights of Margaret Taylor to such $200.00 monthly payments shall thereafter be enforced against such trust and not against the Estate of James B. Taylor nor against his administrator, executor or personal representative, heirs or legatees.

"The said Margaret Taylor shall take and receive the above mentioned items and contractual rights in this paragraph set out in full, final and complete settlement and satisfaction of her entire claim and right in and to the community property and the indebtedness of James B. Taylor or the community estate to her separate estate as well as in full, final and complete satisfaction of her right to the payment of any sums of money in the nature of accounting or otherwise, reserving to her, however, the right to enforce the rights and benefits awarded to her in this paragraph by any and all legal and equitable means.

IV.

"James B. Taylor, by this contract, does take, have and receive, and shall take, have and receive as his own property, free and clear of any claim thereon by Margaret Taylor, each, every and all other items of property of every kind and character now extant or existing with the exception of the particular items set aside to Margaret Taylor in

The agreement referred to itself as a property settlement agreement and not a support agreement. Under it the wife was to take the household goods, an automobile, her personal effects, and she was given an irrevocable right to receive $200.00 per month until 1954 and thereafter $200.00 per month until she died or remarried. The taxpayer was to receive all other property which included all other cash and all the stock in his name in J. B. Taylor Incorporated, what was then and at the time of the trial a highly successful advertising business.[5] In issue here are the payments of $200.00 per month paid after 1954 during the tax years 1957 through 1960.

■ There are two substantial questions presented by this appeal. One, were the contested payments in the nature of or in lieu of alimony or an allowance for support,[6] or were they as the district court found payments in satisfaction of a claim to community property. Two, if these are payments in the nature of alimony is their payment a legal obligation within the meaning of Section 71(a) (1). There is no doubt but that these were periodic payments and they were incurred because of the family relationship under a written instrument incident to a divorce.[7]

■ We are of the opinion that the district court was clearly erroneous in his finding of fact and wrong in his finding of law that the disputed payments were in exchange for property rights and not for support. The decisions reflect two categories of payments, those that satisfy an obligation to support and those in satisfaction of property rights, only the former qualify for a deduction under Section 71.[8] The source of an otherwise deductible payment will not affect its deductibility, since payments may be from property in trust or may be made directly or indirectly from the husband's income or capital.[9] It is, therefore, clear that payments may be made out of property on hand and in that sense termed a property division and still be alimony within the meaning of Sec. 71, if their

paragraph III above, the said property being taken and received by James B. Taylor covering and including but not limited to:

"A. All capital stock issued and standing in his name in J. B. Taylor, Inc., a corporation, as well as any and all rights, claims or demands that James B. Taylor or Margaret Taylor or either of them may have against J. B. Taylor, Inc. or against, or in and to any property or property rights of J. B. Taylor, Inc.

"B. All personal effects, clothes, wearing apparel, and jewelry now in the possession of James B. Taylor.

"C. All rights of every kind and character in and to each, every and all insurance policies now in existence insuring the life of James B. Taylor, covering and including the right to the proceeds thereof, the cash surrender value thereof, and each, every and all rights incident or pertinent to such insurance policies, but, of course, not covering and including the insurance policy which is the subject matter of the Margaret Taylor Trust.

"D. All monies and choses in action now in his possession or existing in any bank or other place in his name.

"It is the intent of the parties to this contract that the said James B. Taylor shall take, have or receive each, every and all properties, tangible or intangible, with the exception of the properties set aside to Margaret Taylor in paragraph III above."

5. This amounted to 51% of the stock in the company.

6. Fed.Tax. Regs. Sec. 1.71–1(a) (1964)
   "Section 71 provides rules for treatment in certain cases of payments in the nature of or in lieu of alimony or an allowance for support as between spouses who are divorced or separated."

7. The payments were periodic in that they were to be paid at stated intervals for an indefinite time. Scofield v. Greer, 185 F. 2d 551 (5th Cir. 1950). Smith's Estate v. Commissioner, 208 F.2d 349 (3rd Cir. 1953). That the payments were incurred because of the family relationship is clear from the agreement and the circumstances surrounding its execution.

8. Soltermann v. United States, 272 F.2d 387 (9th Cir. 1959); Smith's Est. v. Commissioner, 208 F.2d 349 (3rd Cir. 1953); Scott v. United States, 225 F. Supp. 257 (D.Ore.1963).

9. Fed.Tax. Regs. Sec. 1.71–1(c) (2) (1964).

purpose is that of support. The issue then is to determine the purpose of the payments from an examination of the agreement and the testimony.

The cases give us guides for determining this purpose. It is clear that the labels attached to an agreement by the parties are not controlling.[10] Nor is the characterization of the agreement in the divorce decree controlling.[11] In a tax suit involving such an agreement as we have here parol evidence may be admitted,[12] and, of course, was properly admitted here since the agreement here in issue is so ambiguous. Though clearly stating it is a property settlement, it provides for indeterminate payments and for the husband's assumption of the wife's tax liability on those payments if any should arise. Both of these latter provisions are highly indicative of a support agreement.[13]

All of the testimony introduced to resolve the ambiguity in the agreement indicates that the payments were for support. The taxpayer and the attorney who handled his divorce so testified. The taxpayer, his ex-wife and the attorney testified that to the best of their recollection the value of the property on hand at the time of the divorce, less liabilities was about $5936.00.[14] Margaret Taylor received the equivalent of approximately half of this amount in jewelry, household furnishings and the automobile.

There is nothing in the record besides the agreement's categorization of itself to indicate that the wife had any greater property right than that for which she was compensated by provisions of the agreement other than those providing for the disputed payments. We think the district court's findings based as they were only on the statements in the agreement of its nature and the reassertion of this categorization in the divorce decree were clearly erroneous and against the truth and right of the case. The payments in dispute were for the support of taxpayer's ex-wife.[15]

Appellee contends that these payments are not deductible since they are not in discharge of a legal obligation to support. Note 3, supra. Appellee bases this conclusion on the grounds that there is no legal obligation to pay permanent alimony in Texas,[16] and that the payments here if for support would be considered permanent alimony by Texas courts. We could agree with appellee only if we could find that the intent of the drafters of Section 71 and its predecessor was to exclude from the coverage of this statute all payments which a Texas court would consider permanent alimony while otherwise providing for a nation wide deduction for identical payments. There is nothing in the statute or its legislative history that indicates that this is the proper interpretation. The Senate Finance Committee said concerning Sections 22(k) and 23(u), provisions of the 1939 Code similar to Sections 71 and 215 of the 1954 Code, that

"These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payment is under present law includable in his gross income. In addition, the amended sections will produce uniformity in the treatment of amounts paid in the

---

10. Bardwell v. Commissioner, 318 F.2d 786 (10th Cir. 1963).

11. Bardwell v. Commissioner, supra, note 10; Drake v. United States, 191 F.Supp. 84 (S.D.N.Y.1961).

12. Scofield v. Greer, 185 F.2d 551 (5th Cir. 1950).

13. Scofield v. Greer, supra, note 12; Campbell v. Lake, 220 F.2d 341 (5th Cir. 1955).

14. Taxpayer's interest in his business is included in this figure at book value, not at the value of the business to its owner as a going concern.

15. Bardwell v. Commissioner, 318 F.2d 786 (10th Cir. 1963).

16. Lodge v. Lodge, 368 S.W.2d 40 (Tex. Civ.App.1963).

nature of or in lieu of alimony regardless of variance in the laws of different states concerning the existence or continuance of an obligation to pay alimony." [17]

The report of the House Ways and Means committee used substantially identical language in referring to the scope of the statutes.[18]

■ The decisions have given full expression to this statement of purpose. They reflect that the unenforceability of an agreement under state law does not prevent the deduction of payments made pursuant to such an agreement. In Brown v. United States, 121 F.Supp. 106 (N.D.Calif.1954), the government asserted that though contested payments met all the requirements for deduction under the statute they could not be enforceable alimony payments under California law since the payments would continue after the divorced wife's remarriage, and there is no obligation to pay alimony after the wife's remarriage in California. The court, relying on the House Report noted above, held that the state's characterization of these agreements did not prevent their deductibility. In Tuckie G. Hesse, 7 T.C. 700 (1946) it was urged that otherwise deductible payments were not deductible since the law of Pennsylvania did not require or allow the payment of alimony to a spouse who had received an absolute divorce. Relying on the House and Senate Reports cited above, the court held that the payments "were made to take care of the lack of any provision under law which would require the payment of alimony to petitioner" and that they were deductible.[19] Similarly in Charles Campbell, 15 T.C. 355 (1950) the possibility that a separation agreement was void under New York law did not prevent the allowance of a deduction for payments made under the agreement. Our decision of Scofield v. Greer, 5 Cir., 185 F.2d 551 (1950), which involved a Texas agreement very similar to the one here, supports these cases since the argument against deduction that is here being made was there advanced. It was rejected in silence.

This is not a case in which a spouse is seeking to deduct voluntary gratuitous payments.[20] The payments here were hammered out by attorneys representing the husband and wife as an indispensable preliminary to the divorce proceedings. The vagaries of Texas marital law cannot operate to defeat the obvious intent of the statute that it be uniformly applied. The payments here satisfy the statutory requirements for deductibility.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

17. Sen.Rep. No. 1631, 77th Cong., 2d Sess. p. 83.

18. H.R.Rep. No. 2333, 77th Cong. 2nd Session, p. 72.

19. Tuckie G. Hesse, 7 T.C. 700, 704 (1946).

20. Van Vlaanderen v. Comm., 3 Cir., 175 F.2d 389 (1949).