George E. MAUK and Rosemary Mauk,
Plaintiffs,

v.

R. L. PHINNEY, Defendant.

Civ. A. No. 66–H–42.

United States District Court
S. D. Texas,
Houston Division.

Nov. 1, 1967.

Dougal C. Pope, Houston, Tex., for plaintiffs.

Leonard B. Tatar, Tax Atty., Fort Worth, Tex., for defendant.

MEMORANDUM AND ORDER:

HANNAY, District Judge.

Suit to recover federal income taxes and interest in the sum of $2,536.13 paid by Plaintiffs for the calendar years 1959, 1960, and 1961.

## I.

The controversy concerns the tax deductibility of periodic payments made by a former husband to his divorced wife in pursuance of a property settlement agreement between them specifically relating to a substantial item of alleged community property.

The case brings into question the proper application of two provisions of the Internal Revenue Code of 1954, to wit:

Title 26, U.S.C.A. Section 71(a) (1), which states:

"Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."

Title 26, U.S.C.A. Section 215(a), which states:

"General rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed

under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income."

## II.

On May 29, 1959, the aforementioned property settlement agreement was entered into and provided in material parts:

"(e) In consideration for the relinquishment by the said Frances E. Mauk of any claim to the "G.E.M. LITHO-PRINT COMPANY" business herein awarded to GEORGE E. MAUK, and the assignment of it by her to him, the said GEORGE E. MAUK agrees to pay to the said FANCES E. MAUK the sum of SEVENTY TWO THOUSAND EIGHT HUNDRED AND No/100 ($72,800.00) DOLLARS for her interest in said property, such payment to be made in weekly installments of SEVENTY AND NO/100 ($70.00) DOLLARS each, beginning on the date the divorce is granted dissolving their marriage to each other, with a like installment of $70.00 being due and payable on Monday of each calendar week thereafter until the entire sum has been paid in full."

On June 19, 1959, the divorce decree was enetred into and in material parts stated:

"IT IS FURTHER ORDERED that Defendant GEORGE E. MAUK pay to Plaintiff FRANCES E. MAUK the sum of SEVENTY TWO THOUSAND EIGHT HUNDRED AND NO/100 ($72,800.00) DOLLARS in weekly installments of SEVENTY AND NO/100 ($70.00) DOLLARS each, commencing the date this divorce is granted, with a like installment of $70.00 being due and payable on or before Monday of each succeeding calendar week thereafter until the entire sum has been paid in full, representing the consideration to be paid by Defendant to Plaintiff for the assignment of Plaintiff's interest in the "G.E.M. LITHO-PRINT COMPANY" to Defendant.

"IT IS FURTHER ORDERED that the parties shall execute proper instruments effecting the above described property settlement and conveying their respective interest in said properties."

The Plaintiff George E. Mauk executed a "Promissory Note: dated June 1, 1959, to his former wife in the amount of $72,800.00; of equal date she executed a purported "Bill of Sale" to the former husband providing that in consideration of the mentioned promissory note she bargained, sold and delivered to him:

" * * * all of my undivided interest in and to the business known as G.E.M. Litho-Print Co. together with all of its equipment, fixtures, assets, accounts receivable, and everything pertaining thereto and used in connection therewith."

Plaintiff contends that the $70.00 weekly payments over the years in question were "alimony" payments and deductible under the Code provisions; the Defendant contends that the periodic payments are not deductible under the code because they were part of a division and settlement of the wife's share of the community property.

In the alternative, Plaintiff contends that he is entitled to a depreciation deduction on the $72,800.00 item as it represents cost of depreciable fixed assets with an estimated life of twenty years with the depreciation deduction during the taxable year being the same $2,170.00 as the taxpayer claimed as a deductible alimony payment.

## III.

As the parties each seek summary judgment, there is no contention of unresolved material issues of fact. Plaintiff's sworn motion for Summary Judgment contains the allegation, uncontroverted under oath by defendant, that:

"On March 27, 1963, Internal Revenue Service submitted a report on Frances E. Mauk in connection with her 1959 income tax return. This was on their form 2808. In that report Internal Revenue Service determined

that Frances E. Mauk had received in excess of 50% of the community property at the date of the divorce. Internal Revenue Service determined that the value of the property that she received, less liabilities, (the property that she received does not include the $72,800.00 item) was $6,207.00 and that of the property that Plaintiff George Mauk received in the divorce Settlement that the liabilities exceeded the value of the property by $26,544.73."

There is no evidence or claim in the record that a liquidation at this time of "G.E.M. Litho-Print Co." would net Frances E. Mauk anything like $72,800.00 as her erstwhile community interest in the property. Neither now nor at the time of the settlement agreement and divorce does this appear to be the case. On the contrary, it appears without controversy and on the basis of the government's own computation that at the time of the divorce the excess of liabilities over assets in the mentioned property was some $27,544.73. (See Plaintiff's Exhabit "A", page #3 of the government's form No. 2808, Statement of Examining Officer's Proposed Adjustment). There is no evidence that there was then or

could be now such a substantial purchaser's market for the business. There is no evidence that the successful operation of the business, then and in the future, would not be dependent upon and peculiar to its ownership and direction by George E. Mauk.

Other material facts bearing on the case at hand are stipulated to by the parties and are as follows:

(1) George E. Mauk was born on November 22, 1914. Frances E. Mauk, Former wife of George E. Mauk, was born on December 21, 1917.

(2) George and Frances Mauk were married on September 18, 1936, and divorced on June 1, 1959.

(3) During this marriage of George and Frances Mauk, two children were born. Georgia Ann Mauk was born on October 18, 1946, and John Elton Mauk was born on January 19, 1949.

(4) Values, if any, of any life insurance policies received by Frances Mauk or George Mauk upon their divorce are to be disregarded herein.

(5) The extent and disposition of the community property at the time of the divorce of George and Frances Mauk was as follows:

| Assets | Market Value | George | Frances |
|---|---|---|---|
| Homestead | $12,400.00 | $ –0– | $12,400.00 |
| Furniture | 2,500.00 | –0– | 2,500.00 |
| Auto | 1,500.00 | –0– | 1,500.00 |
| Personal Effects | 2,000.00 | 1,000.00 | 1,000.00 |
| Total Assets | $18,400.00 | $ 1,000.00 | $17,400.00 |
| Liabilities | | | |
| Mortgage on home | $10,192.91 | $ –0– | $10,192.91 |
| G.E.M. Litho-Print Company proprietorship excess liabilities over assets | 27,544.73 | 27,544.73 | –0– |
| Total Liabilities | $37,737.64 | $27,544.73 | $10,192.91 |
| | ($19,337.64) | ($26,544.73) | $ 7,207.09 |

(6) If Frances Mauk died prior to full payment of the promissory note for $72,800.00 payable in weekly installments of $70.00, her estate would be entitled

to receive the payments remaining due thereon.

## IV.

Apart from the undisputed community property nature of the principal asset as defined by Texas Law (the "G.E.M. Litho-Print Co."), instant case would seem to fall—factually and in contemplation of law—within the rule announced in the well considered case of Taylor v. Campbell, 5 Cir., 335 F.2d 841.

> " * * * The source of an otherwise deductible payment will not affect its deductibility, since payments may be from property in trust or may be made directly or indirectly from the husband's income or capital. It is, therefore, clear that payments may be made out of property on hand and in that sense termed a property division and still be alimony within the meaning of Sec. 71, if their purpose is that of support. The issue then is to determine the purpose of the payments from an examination of the agreement and the testimony." 335 F.2d at 844–845."

But the opinion of Taylor v. Campbell indicates sufficiently that the principal corporate asset retained by the husband, J. B. Taylor Incorporated, was community in nature. More significantly, the government's contention there that the absence of a legal obligation in Texas to pay permanent alimony (citing Lodge v. Lodge, Tex.Civ.App., 368 S.W.2d 40) precluded the periodic payments to the former wife as being for support under the Code was rejected. 335 F.2d at 845. The controlling principle was deemed to be the Congressional intent, as demonstrated by the legislative history of the statute and its predecessors, to provide a uniform basis throughout the nation for determining support payments. The opinion quotes from the U. S. Senate Finance Committee's report pertaining to prior statutes similar to Sections 71 and 215 of the 1954 Code:

> "These amendments are intended to treat such payments of income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payment is under present law includible in his gross income. In addition, the amended Sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different states concerning the existence or continuance of an obligation to pay alimony." Citing Sen.Rep. No. 1631, 77th Cong., 2nd Sess. p. 83. 335 F.2d 845–846.

The concluding paragraph in Taylor v. Campbell, 335 F.2d at 846, is apropos here:

> "This is not a case in which a spouse is seeking to deduct voluntary gratuitous payments. The payments here were hammered out by attorneys representing the husband and wife as an indispensable preliminary to the divorce *proceedings*. The vagaries of Texas marital law cannot operate to defeat the obvious intent of the statute that it be uniformly applied. The payments here satisfy the statutory requirements for deductibility."

## V.

The government seeks to distinguish Taylor v. Campbell on several counts. One is that the payments in the latter were certain only for a limited period of time and these terminable upon either her death or remarriage. Another is that the wife here unequivocally relinquished her community property interest in the corporation in return for Plaintiff's absolute obligation to make the support payments. Yet another was an agreement in Taylor v. Campbell for the husband to assume certain of the wife's tax liabilities by virtue of the sums to be paid.

But the property settlement agreement in instant case simply left in being, after otherwise making a fair distribution of

remaining community assets, a going business concern that presumably came into being as a community asset within the contemplation of Texas law. The wife's absolute right to receive payments of $70.00 a week arose out of the property settlement agreement with the husband and is based upon solemn, inviolable contract. The clear intendment of the statutes is to tax income as it accrues rather than to penalize the existence or encourage the liquidation of a productive capital asset. As made clear by Taylor v. Campbell, this salutary purpose and principle is not, and should not be, beholden to the vagaries of state laws in their various definitions and denominations of marital property rights.

## VI.

Defendant relies upon Campbell v. Lake, 5 Cir., 220 F.2d 341. But there again the Court looked to the property settlement agreement.

> "The agreement between taxpayer and his wife was incorporated in full in the divorce decree. It was entitled "Contract for Settlement of Property Rights". It recited in part: that P. G. Lake and Frances Peyton Lake desire to enter into a contract of settlement partitioning and dividing their community property, and settling all property rights as between them; that taxpayer agreed to transfer to his wife $50,000 in cash, certain real property in Arkansas, having an agreed fair market value at that time of $52,000, and further agreed to pay her beginning Feb. 1, 1941, the sum of $1,000 per month until he had paid her a total of $125,000; and that 'the money and property set apart to (the wife) * * * and to be paid her in the future, is the value of the said Frances Peyton Lake's one-half of the community estate and is the most equitable manner of partitioning said community estate between said parties.' * * * *"
> See footnote No. 4, 220 F.2d, at 342.

It is additionally significant that at least a substantial part of the community estate in Campbell v. Lake consisted of accrued or assessed income from oil properties in which the husband had invested some two decades prior to the dispute over the tax liability on the monthly payments to the wife. See in its entirety, footnote 4, 220 F.2d 342–343.

That the contractual settlement agreement was determinative in Campbell v. Lake, as in Taylor v. Campbell, is demonstrated by the language of the opinion in the former case, 220 F.2d at 343:

> "Appellee's attempt to explain away the recitation in the property settlement and in the decree, that the money and property set apart to Mrs. Lake and to be paid her in installments represented the value of her one-half of the community estate and was the equitable manner of partitioning the community property, by citing McBride v. McBride, Tex.Civ.App., 256 S.W.2d 250, and theorizing that the parties were only trying to state in effect that no permanent alimony was being paid, will not, we think, do. The lawyers representing the parties were highly competent draftsmen. If they had desired to say this, they could and would have said it simply and directly and with no beating about the bush. What they did say was said simply and directly, and there is no evidence in this record contradicting what they said. It will, therefore, not do, as appellee undertakes at this late date to do, to subject the facts and figures used in the settlement and decree to an analysis, in the nature of higher criticism, designed to read into and extract from them an entirely different meaning and effect from that which the parties had in precise terms ascribed to them".

## VII.

Both Campbell v. Lake and later Taylor v. Campbell refer with approbation and endorsement to the earlier case of Scofield v. Greer, 5 Cir., 185 F.2d 551. There, pursuant to a property settlement

agreement between the parties and the granting to the wife her share of the community property, the husband agreed to make additional monthly support payments until such time as the wife remarried. The Court of Appeals held that the monthly support payments which the husband made pursuant to the property settlement agreement, independent of the limitations and requirements of state law, were deductible from his gross income under the Code. Reaffirming the overriding importance of the property settlement contract, the Court in Taylor v. Campbell stated (335 F.2d, at 846):

"* * * Similarly in Charles Campbell, 15 T.C. 355 (1950) the possibility that a separation agreement was void under New York law did not prevent the allowance of a deduction for payments made under the agreement. Our decision of Scofield v. Greer, 5 Cir., 185 F.2d 551 (1950) which involved a Texas agreement very similar to the one here, supports these cases since the argument against deductions that is here being made was there advanced. It was rejected in silence."

I find and hold that instant case is within the salutary rule of Taylor v. Campbell, 5 Cir., 335 F.2d 841, and in critical particulars is factually distinguishable from the prior and consistent authorities of Campbell v. Lake, supra, and Scofield v. Greer, supra.

Disposition of instant case on the foregoing grounds dispenses with the necessity for considering Plaintiffs' alternate and pregnant contention that the "G.E.M. Litho-Print Co." be adjudged a depreciable fixed asset out of which the monies in question should be deemed tax deductible.

It follows from the foregoing that Plaintiff is entitled to summary judgment herein.

Counsel will draft an order accordingly.

The foregoing constitutes Findings of Fact and Conclusions of Law.