RUTH E. KERN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 265–69SC. Filed December 3, 1970.

*Towner Leeper*, for the petitioner.
*W. Read Smith* and *Daniel A. Taylor, Jr.*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $305.84 in the petitioner's 1966 Federal income tax. The issue for decision is whether the petitioner is required to include in taxable income certain payments which she received for her support while she was securing additional education and which were paid to her by her former husband pursuant to an agreement incident to their divorce.

### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

The petitioner, Ruth E. Kern, maintained her residence in El Paso, Tex., at the time the petition was filed in this case. She filed her 1966 individual Federal income tax return with the district director of internal revenue, Austin, Tex.

The petitioner was married to Martin Kern in 1948. The marriage was terminated by a decree of divorce granted to the petitioner by the District Court of El Paso County, Tex., on October 14, 1966. On October 7, 1966, the petitioner and Mr. Kern entered into an agreement in contemplation of divorce, and this agreement was incorporated by reference into the divorce decree.

The substantive provisions of the agreement were prefaced by a statement of the objectives of Mr. and Mrs. Kern:

[T]he parties desire to settle completely and forever their property rights in and to their community property, to effect a partition of their community property, *and to settle and adjust by this Agreement all of the rights and obligations arising out of their marital relations;* [Emphasis supplied.]

The agreement described the parties' holdings of separate and community property, and provided how the community property was to be divided between them in a manner which very closely approached an equal division of such property. It provided that Mr. Kern would pay designated amounts of support for the couple's two children, who were to be in the custody of the petitioner.

The agreement also contained the following paragraph:

6. *Education Allowance for Wife.* It is contemplated by the parties that the Wife in an endeavor to become self-supporting will study and attend a review course for the State Bar Examination. The Husband agrees to contribute for the support of the Wife during such period the sum of $625.00 each month for a period of 6 months on November 15, December 15, 1966, January 15, February 15, March 15, and April 15, 1967. If the Wife dies or if the Wife remarries during the six-month period, the payments shall cease.

The payments described in paragraph 6 and the payments for child support were the only periodic payments which Mr. Kern was required to make to the petitioner under the agreement. The agreement also provided that "each party accepts the provisions herein in full satisfaction of all property rights and all obligations for support or otherwise arising out of the marital relationship of the parties."

As contemplated by the agreement, the petitioner did in fact study for the Texas bar examination, which she passed, and subsequently engaged in the practice of law. Pursuant to paragraph 6 of the agreement, Mr. Kern paid a total of $1,250 to the petitioner in 1966.

From January 1964 through the summer of 1965, Mr. Kern attended the University of California at Berkeley, where he was a full-time student at the Graduate School of Business. The total of the expenses attributable to Mr. Kern's attending college was about $3,000 to $3,500, including additional family living expenses and approximately $1,500 for the tuition, books, and related expenses. During those years, the petitioner worked and earned $721.75 in 1964 and $436.72 in 1965, and she contributed such earnings to the family expenses. The remaining expenses of his education were paid out of funds that the couple had accumulated.

The sixth paragraph was included in the agreement because the petitioner and Mr. Kern thought it fair that, in view of the assistance she had given him in the pursuit of his further education, she should receive aid from him for the extra education she needed to help her support herself.

OPINION

The issue for decision is whether the petitioner must include in taxable income the payments totaling $1,250 that she received from her former husband in 1966 under the sixth paragraph of the agreement.

A divorced wife must include in her gross income payments which she receives from her former husband "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce." Sec. 71(a)(1), I.R.C.

1954;[1] see also sec. 1.71–1(b)(1)(i), Income Tax Regs. In this case, the sole issue is whether the payments described in the sixth paragraph of the agreement were made pursuant to a legal obligation which was imposed upon or incurred by Mr. Kern by reason of the marital relationship. The petitioner contends that such payments were not made pursuant to such an obligation, but rather, that Mr. Kern agreed to make them as a result of a "moral obligation" resulting from the petitioner's having assisted him to secure additional education. According to the petitioner, section 71(a)(1) does not apply to payments arising out of such a moral obligation.

The petitioner asserts, and the respondent does not deny, that Texas law does not require a divorced husband to educate his former wife. However, in *Taylor* v. *Campbell*, 335 F. 2d 841 (C.A. 5, 1964), it was held if a husband undertakes a legal obligation to make payments to his wife after their divorce, and the obligation in all respects meets the requirements of section 71(a)(1), that section applies despite the fact that such payments would not have been imposed upon him by the court granting the divorce under the applicable State law. The same position has been adopted by this Court in *Blanche Curtis Newbury*, 46 T.C. 690 (1966); *Ada M. Dixon*, 44 T.C. 709 (1965); *Thomas E. Hogg*, 13 T.C. 361 (1949); and *Tuckie G. Hesse*, 7 T.C. 700 (1946). In these cases, the courts reasoned that since section 71(a)(1) speaks of a legal obligation "imposed on or incurred by the husband," such language indicates that Congress intended to deal with a legal obligation which the husband voluntarily incurred, as well as one which was judicially imposed on him.

In her briefs, the petitioner indicates that her case is not based upon the premise that Mr. Kern's obligation to support her while she was securing additional education was unenforceable. Rather, she argues that he undertook to make such payments because of a moral obligation which was independent of the marital relationship. We find the petitioner's concept of the marital relationship artificial and unrealistically narrow. As a result of the marital relationship, the spouses undertake to do many things for each other. We assume that when the petitioner went to work to assist her husband to secure additional education, it was done because of the marital relationship. Similarly, we are convinced that when Mr. Kern undertook to assist the petitioner to secure additional education, it was done because of the marital relationship—he would not have entered into such an undertaking for a stranger, nor would he have agreed to pay $3,750 in return for another's substantially lesser assistance. When a marriage is terminated by divorce, a husband frequently agrees to pay

[1] All statutory references are to the Internal Revenue Code of 1954.

more alimony or support than the law would require of him; yet, his undertaking to do more than is required of him grows out of the former marital relationship, and surely no one would argue that only the minimum amount of support should be treated under section 71 as taxable to the wife.

The undertaking in this case to provide for the petitioner's further education is entirely distinguishable from the situation in which there is an agreement to repay a loan or to transfer property. In those situations, there is a relationship between the husband and wife which is distinct from and independent of the marital relationship. Likewise, this case is distinguishable from *George R. Joslyn*, 23 T.C. 126 (1954), affirmed in part and reversed in part 230 F. 2d 871 (C.A. 7, 1956), in which the husband had an option to pay a smaller or a larger sum—if he elected to pay the greater sum, it was wholly gratuitous—there was not even a colorable legal obligation to make the larger payments.

After the trial in this case, this Court held that section 71(a)(1) does not apply to payments designated as alimony when such payments are made subsequent to the remarriage of the divorced wife, when the divorced husband has knowledge of such remarriage, and when the applicable State law provides that a party shall not be entitled to alimony after remarriage. *Allen Hoffman*, 54 T.C. 1607 (1970), on appeal (C.A. 7, Nov. 9, 1970). The petitioner has called our attention to such case in support of her argument, but we think that the two cases are factually distinguishable.

In *Allen Hoffman*, the agreement incident to the divorce and the divorce decree provided for the payment of "permanent alimony"; thus, after the remarriage of the wife, it was necessary to decide whether alimony continued to be payable. Because a question existed as to the intention of the parties and the Illinois court, this Court held that the agreement and the decree had to be read in light of Illinois law, and since such law provided explicitly for the termination of alimony on remarriage of the wife, it was held that there was no intent that the husband be legally obligated to continue to pay alimony after her remarriage. On the contrary, in the case before us, no question whatsoever exists as to the intention of the parties or the Texas court. Although the applicable Texas law apparently did not require Mr. Kern to provide for the support of the petitioner while she was securing additional education, he agreed to make such payments, presumably with knowledge that he was not required to do so, and such agreement was incorporated in the divorce decree. Thus, there is no need to look to Texas law to ascertain the underlying

intent; such intent was made perfectly clear by the language of the agreement.

Moreover, in *Allen Hoffman*, this Court said that the husband's legal obligation was established by the decree of the Illinois court granting the divorce, and because the court could not establish as an element of the decree a provision in derogation of State law, there could be no legal obligation upon the husband to pay alimony after the remarriage of his former wife. This Court pointed out that the State law requiring the termination of alimony upon the wife's remarriage was a "mandatory provision" which "operates automatically as a matter of law." In contrast to the situation in that case, there is no suggestion here that the statutory law of Texas provides that a divorced husband shall not make temporary support payments to his unremarried former wife pursuant to a voluntarily incurred obligation. Mr. Kern's undertaking an obligation to make the payments to the petitioner was an act done to supplement and surpass the requirements of the State's statutory law, but was not an act which contravened any of its explicit provisions.

In any event, because this case arose in the Fifth Circuit, our conclusion is governed by *Taylor* v. *Campbell*, *supra*. *Jack E. Golsen*, 54 T.C. 742 (1970), on appeal (C.A. 10, May 4, 1970). Even if Mr. Kern's obligation was unenforceable under Texas law, a question upon which we need not and do not pass judgment, *Taylor* v. *Campbell* would constrain us to hold that section 71(a)(1) applies to payments made pursuant to such obligation. The Fifth Circuit in that case cited with approval legislative history concerning the predecessor of section 71 which indicated that amounts paid in the nature of or in lieu of alimony were intended to be treated uniformly regardless of any variance in different States' laws regarding the existence or continuation of an obligation to pay alimony; the court said that "The vagaries of Texas marital law cannot operate to defeat the obvious intent of the statute that it be uniformly applied." Therefore, it seems clear that the Fifth Circuit would, under *Taylor* v. *Campbell*, apply section 71(a) (1) in this case.

We conclude that the payments received by the petitioner from her former husband pursuant to paragraph 6 of the agreement incident to their divorce were received in discharge of a legal obligation incurred by Mr. Kern because of the marital or family relationship. Therefore, such payments are includable in the petitioner's gross income under section 71(a)(1).

*Decision will be entered for the respondent.*