GLENN T. SWINDLE, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Swindle v. Commissioner
Docket No. 6762-74.
United States Tax Court
T.C. Memo 1976-1; 1976 Tax Ct. Memo LEXIS 397; 35 T.C.M. (CCH) 1701; T.C.M. (RIA) 76001; January 7, 1976, Filed Glenn T. Swindle, Jr., pro se. Stuart B. Kalb, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1970 and 1971 in the amounts of $2,876 and $314, respectively. Several issues having been settled by the parties, the following issues are left for our decision: 1. Whether petitioner is entitled to "alimony" deductions under section 215 [1]/ for amounts paid to purchase a mobile home for his former wife; and 2. Whether petitioner is entitled to deduct payments for membership dues in *400 the local Elks Club as an ordinary and necessary business expense within the meaning of section 162. FINDINGS OF FACT Petitioner Glenn T. Swindle, Jr. (hereinafter petitioner), was a legal resident of Valdosta, Georgia, at the time his petition was filed. He filed his Federal income tax returns for 1970 and 1971 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioner, a dentist, was married to Sophia Swindle (hereinafter Sophia) on June 16, 1962. At that time, petitioner was a student at Emory University Dental School. Sophia worked as a registered nurse during the first 2 years of their marriage. From 1964 through August 1966, petitioner was in the United States Air Force and was stationed at Craig Air Force Base in Alabama. In 1966, petitioner and Sophia returned to Valdosta, Georgia, where they resided until they were separated on January 20, 1970. On January 22, 1970, petitioner and Sophia executed a separation agreement (hereinafter the agreement), which contained provisions settling the rights of the parties arising from their marriage. The agreement recited that Sophia would have custody of the three children born of the marriage and that petitioner *401 would pay Sophia $100 per month for the support of each child. Petitioner was also to pay Sophia $350 per month as alimony until she remarried or died. The agreement further provided: 5. It is agreed that first party [Sophia] shall have all right, title and interest to the following items of household furniture: Piano, color television set, encyclopedias, and freezer. All other items of household furniture shall be the property of second party [petitioner]. 6. Second party agrees to purchase for first party an Artcraft Trailer or mobile home as selected by first party, to set this trailer up on the lot of first party near Griffin, Georgia, and to be responsible for cost of delivering said mobile home to aforesaid lot. In addition, second party agrees to pay the expense of fence at yard where said trailer is to be located, said fence being required for the safety of Stephen Craig Swindle. The total cost of this trailer and its set-up on the lot not to exceed $10,000.00. * * *
8. The 1968 Oldsmobile automobile acquired during the time of the marriage shall be the property of first party and the 1969 Pontiac automobile, acquired during the time of the marriage, *402 shall be the property of second party. 9. First party waives all right, title or interest in boat, airplane and house located at 2300 River Hill Drive, Valdosta, Georgia, as well as any other property or properties now or hereafter acquired by second party except as specifically provided in this agreement. Negotiations leading to the separation agreement were conducted under the supervision of one attorney, John Peeples, who was retained by petitioner. As a basis for the negotiations, petitioner calculated that he and Sophia owned property with a value of approximately $20,000. The provision in the agreement for the purchase of a mobile home was designed to compensate Sophia for her share of this property. Petitioner referred Sophia to a friend, Elliot Sirmons, who was active in the mobile home business. He initially recommended the purchase of an Artcraft Mobile Home which would cost approximately $5,000. Neither party was satisfied with that particular model. Accompanied by Sirmons, Sophia selected a Parkwood Mobile Home which she found suitable for herself and her children. The purchase price of the Parkwood Mobile Home, including accessories and applicable taxes, was *403 $8,986.75. After a cash downpayment in the amount of $1,376.75, the remainder of the purchase price was to be financed by 120 monthly payments of $120.53 each. The retail installment sales contract was signed by petitioner and Sophia. Petitioner decided that he could not afford the more expensive mobile home that Sophia selected unless he could finance the payments and deduct them from his income as alimony. Petitioner and Sophia executed an amendment to the agreement on January 30, 1970 (hereinafter the amended agreement) which recites in pertinent part: WHEREAS, by the terms of this agreement it was provided that second party would purchase for first party an Artcraft Trailer or mobile home and set this trailer up on the lot of first party near Griffin, Georgia, and WHEREAS, first party has now selected instead of the Artcraft Trailer a Parkwood Trailer, and WHEREAS, it has now been agreed that the monthly payments due on the purchase of said trailer or mobile home shall be a part of alimony by second party to first party * * *
2. Monthly alimony payments to be made by second party to first party shall include in addition to the $350.00 payment provided for in paragraph *404 3 of the agreement monthly installment payments of approximately $150.00 for the purchase and set-up of said trailer. These monthly installment payments for said trailer shall extend for a period of at least 121 months until payment has been made in full. 3. These monthly payments of approximately $150.00 for at least 121 months shall be deemed alimony and shall be deductible as such by second party for income tax purposes. In other words, the amount of monthly alimony payments by second party to first party shall be $350.00 plus monthly installment payments of approximately $150.00 for the trailer referred to aforesaid. Said payments for trailer shall be included in the monthly alimony payments made by second party to first party and first party shall then be responsible for payment each month to the seller of the mobile home or his agent. The amendment also provided that the mobile home would be Sophia's property. If she sells the mobile home, she must satisfy any remaining indebtedness from the proceeds. The amendment was read to Sophia by Peeples and signed by her and petitioner. Sophia and petitioner received a final divorce decree on March 6, 1970, which incorporated the *405 agreement and its amendment. The decree merely restated the major provisions of the agreement, including those pertaining to monthly payments of alimony of $350 and child support of $100 per child. The decree states: Disposition of properties and settlement of other issues shall be in accordance with the contract agreement between the parties dated January 22, 1970 and the amendment to agreement dated January 30, 1970. Prior to the decree petitioner made several payments to or on behalf of Sophia. Two checks, in the amounts of $1,294.35 and $82.40, dated January 30, 1970, and February 9, 1970, respectively, were issued to the order of the mobile home broker. The two checks total $1,376.75, the amount required as a downpayment by the retail installment contract described above. A third check in the amount of $1,013.25 was issued to the order of Sophia. This amount equals exactly the difference between the stated cost of the mobile home and the $10,000 property settlement figure upon which the parties had agreed. The check contains a notation "Balance of $10,000.00," which is crossed out, and above it is written in petitioner's handwriting "Well and septic tank." Petitioner crossed *406 out the former notation, which was not written by him, while preparing his records for this case. Sophia in fact used this money, which she thought constituted the balance of the $10,000 owed her, to purchase a well and septic tank for her mobile home. Petitioner also reimbursed Sophia for the cost of an airconditioning unit for the mobile home in the amount of $400. On his income tax return for 1970, petitioner deducted 12 monthly alimony payments of $350 each, a downpayment of $1,376.75, $1,220.30 representing the installment payments on the mobile home, and the $400 he paid for the air-conditioner. [2]/ On his 1971 tax return, petitioner deducted 12 monthly payments totaling $4,200 and $1,446 of installment payments as alimony. On her 1970 and 1971 returns, Sophia reported the monthly alimony payments of $350 as income but did not report any of the other amounts deducted as alimony by petitioner. In his notice of deficiency, *407 respondent disallowed as alimony deductions all amounts claimed in 1970 and 1971 except the monthly payments of $350. Also disallowed was a deduction in 1971 of $100 for dues paid by petitioner to join Valdosta Lodge No. 728 of the Elks. Petitioner joined the Elks Club and attended approximately 30 percent of the scheduled monthly meetings. He utilized the club's facilities mainly for social contacts on weekends. Some of the people he met at the club later became his patients. ULTIMATE FINDINGS OF FACT The $1,376.75, comprised of two checks in the amounts of $1,294.35 and $82.40, was the downpayment on the mobile home. Petitioner's installment payments on Sophia's mobile home, as well as the downpayment in the amount of $1,376.75, the $1,013.25 used for a well and septic tank, and the $400 paid for the air-conditioner were not deductible as alimony but were payments in exchange for Sophia's share of marital property. OPINION 1. The Alimony Issue
Section 215 [3]/ allows a deduction for amounts paid by a husband to his divorced or legally separated wife if those payments are includible in the wife's income under section 71. Section 71, [4] in relevant part, includes *408 in a wife's gross income periodic payments from her husband in discharge of a legal obligation which, because of the marital relationship, is imposed upon the husband under a divorce decree or a written instrument incident to the decree. The regulations amplify and clarify the bare language of the statute by providing that section 71(a) applies only to periodic payments in recognition of the "general obligation to support." Sec. 1.71-1(b)(4), Income Tax Regs.
*409 Relying upon the language of the amended agreement, petitioner argues that the payments he deducted constituted alimony arising out of his obligation to support his wife. That obligation, he maintains, was made specific in the agreements and divorce decree. According to petitioner, the payments were periodically payable over a period exceeding 10 years, see sec. 71(c)(2), includible in his wife's income under section 71, and, therefore, deductible by him under section 215. Respondent argues that, despite the language of the amended agreement, the payments merely compensated Sophia for her share of the marital property and are not within the ambit of sections 71 and 215. We hold for respondent. Respondent's legal position is well settled. A multiplicity of cases have held that payments in settlement of a spouse's property rights represent a division of capital by the husband and wife and are not payments discharging "an obligation to support" as contemplated by sections 215 and 71. See, e.g., Grant R. Bishop,55 T.C. 720, 725 (1971); Ernest H. Mills,54 T.C. 608, 615 (1970), affd. 442 F.2d 1149 (10th Cir. 1971); Lewis B. Jackson, Jr.,54 T.C. 125, 129 (1970); *410 Wilma Thompson,50 T.C. 522, 525 (1968); see also Bernatschke v. United States,176 Ct. Cl. 1234, 1244, 364 F.2d 400, 407 (1966). These cases emphasize that sections 71 and 215 were intended to alleviate the hardships which arise when husbands are required to expend substantial amounts of otherwise taxable income for the support of divorced or legally separated wives. These sections shift the incidence of taxation to the wife when a part of her husband's income is diverted to her through periodic payments which satisfy his obligation of support. The sections are not intended, however, to preclude a tax-free division of property acquired during the marriage. Rather, the legislative history of these sections clearly shows that a husband is not entitled to deduct capital outlays made to acquire his wife's interest in the marital property. H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 428; see Bardwell v. Commissioner,318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84 (1962); Grant R. Bishop,supra at 725. The issue as to the character of a husband's payments to his former *411 wife is factual, and the burden of proof rests with petitioner. The answer depends upon all the facts and circumstances rather than upon the labels used in the separation agreement. See Taylor v. Campbell,335 F.2d 841, 845 (5th Cir. 1964); Grant R. Bishop,supra at 724; Ben C. Land,61 T.C. 675, 683 (1974); Ann Hairston Ryker,33 T.C. 924, 929 (1960); Lewis B. Jackson, Jr.,supra at 130. In light of all the evidence, we have concluded that petitioner's purchase of the mobile home and all his payments incident thereto were made to compensate Sophia for her interest in the marital property, and hence are nondeductible capital expenditures. As we interpret it, the original agreement comprehended two separate elements. First, Sophia was to receive monthly alimony payments of $350. These payments were to terminate upon her death or remarriage. Second, the property of the couple was to be divided. The agreement made specific divisions: Sophia was to receive one of two automobiles, some appliances, and other household items. She was also to receive a mobile home of her selection for a purchase *412 price not to exceed $10,000. In return, she waived her right to any interest in the house, airplane, boat, and to any remaining household items. The original agreement thus constituted a comprehensive contractual division of property. The purchase of the mobile home required by the agreement and decree was merely one component of this scheme. Petitioner admits as much. He testified that, excluding property specifically transferred by the agreement, the value of Sophia's property interest was approximately $10,000; that the figure of $10,000 was the basis of negotiation for a property settlement; and that the purpose of his purchase of the mobile home was to reimburse her for that interest. Thus, at the time the original agreement was executed, the manifest intention of the parties was to effect a division of capital, not to supplement Sophia's support payments. When Sophia chose a more expensive mobile home, though within the agreed $10,000 price range, petitioner realized the purchase would have to be financed. He now claims that he could not afford the payments unless they were treated as deductible alimony payments. For that reason, the original agreement was amended to label *413 the installment payments additional monthly alimony. We cannot give effect to the belated attempt to recharacterize what was in truth a property settlement. The mere fact that petitioner chose to satisfy his obligation via convenient monthly payments does not change the nature of the obligation. Van Orman v. Commissioner,418 F.2d 170, 172 (7th Cir. 1969), affg. a Memorandum Opinion of this Court. Petitioner has not persuaded us that the amended agreement and the label therein given to the payments accurately reflected either the intention of the parties or the economic realities of the transaction. See Bardwell v. Commissioner,supra at 789; Taylor v. Campbell,supra at 845; Soltermann v. United States,272 F.2d 387, 389-390 (9th Cir. 1959); Bernatschke v. United States,supra at 404; cf. Ernest H. Mills,supra at 618. Sophia was not represented by an attorney and, although the amended agreement was read to her, we do not think she intended to give up her property interests gratis.Cf. Ben C. Land,supra at 684; Grant R. Bishop,supra at 726. *414 Yet under the terms of the amendment, she would receive nothing for the $10,000 interest in property which petitioner admits she owned-- a result neither party intended. See Van Orman v. Commissioner,supra at 172. Moreover, the installment payments claimed as alimony have none of the elements normally associated with support or alimony payments. Thus, the payments were due in all events. They would not be terminated by the death or remarriage of Sophia, and the note would be the liability of petitioner's estate should he predecease Sophia. See Soltermann v. United States,supra at 390; Campbell v. Lake,220 F.2d 341, 343 (5th Cir. 1955); Grant R. Bishop,supra at 726. The amount of the payments was inflexible and would not be subject to adjustment as a result of fluctuations in petitioner's income, a characteristic which detracts from the claim they were alimony. See Berntschke v. United States,supra; Ann Hairston Ryker,supra at 929-930. Finally, the existence of a fixed sum due on the note strongly indicates that a division of property was the purpose of the payments. *415 See Ben C. Land,supra at 683. These installment payments may be contrasted with those originally designated as alimony. The latter payments were to terminate upon Sophia's death or remarriage and thus were not a definite obligation to pay a fixed principal sum. The fact that the $1,013.25 payment for the well and septic tank equalled the difference between the cost of the mobile home and the $10,000 figure agreed to by the parties as Sophia's property share further supports our conclusion that all the payments with respect to the mobile home were derived from the original property settlement. In sum, we find that all the installment payments, the $1,376.75 [5]/ downpayment, the $1,013.25 payment for the well and septic tank, and the $400 payment for the air-conditioner all stemmed from the mutually agreed upon rearrangement of petitioner's and Sophia's property interests. They are not deductible by petitioner. [6]
*416 2. The Club Dues Issue
Section 274(a)(1)(B) [7]/ provides that no deduction is allowable for items paid with respect to an entertainment facility unless the taxpayer shows, among other things, that the facility was used primarily for the furtherance of his trade or business and that the item was directly related to the active conduct of such trade or business. Under section 274(a)(2)(A), [8] dues paid to social clubs are treated as items with respect to facilities. *417 We do not think that petitioner has carried his burden of proof on this issue. Welch v. Helvering,290 U.S. 111 (1933). The record contains only petitioner's bare assertions that some of his patients were obtained through his membership in the club. No records or other substantiation of any kind was produced. See sec. 274(d). Nor did petitioner testify that the use of the club was primarily to further his trade or business. Respondent's determination that the dues are not deductible must, therefore, be sustained. To reflect the foregoing and adjustments by the parties, Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.
2. /↩ Petitioner also deducted as alimony $2,973.18 paid to General Electric Credit Corporation, which he now concedes were nondeductible personal expenses. In addition, petitioner concedes that he made only 11 monthly payments of $350 to Sophia.
3. / SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. (b) Cross Reference.--For definitions of "husband" and "wife", see section 7701(a)(17). ↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * ↩
5. /↩ Petitioner asserts that he is entitled to deduct not only the downpayment, which he did on his return for 1970, but also the check for an addition to the mobile home in the amount of $1,294.35 and for a washer-dryer in the amount of $82.40. Sophia testified these items were included in the price of the home. We have found, in the absence of independent evidence that petitioner paid an additional $1,376.75, that the two checks constituted the downpayment claimed on his 1970 return. 6. In this notice of deficiency, respondent allowed petitioner deductions for the interest component of the installment payments. That allowance permits petitioner to deduct all the extra cost of financing the purchase of the mobile home, leaving his net payments at approximately $10,000.↩
7. / SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. (a) Entertainment, Amusement, or Recreation.-- (1) In general.--No deduction otherwise allowable under this chapter shall be allowed for any item-- (A) Activity.--With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, or (B) Facility.--With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. ↩
8. Sec. 274(a)(2)(A) provides as follows: (2) Special rules.--For purposes of applying paragraph (1)-- (A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities.↩