MARION R. HESSE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

STANLEY H. HESSE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8380-71, 788-72. Filed August 7, 1973.

*Patrick W. Kittredge*, for the petitioner in docket No. 8380-71.
*William G. O'Neill*, for the petitioner in docket No. 788-72.
*Stephen Cadden*, for the respondent.

SIMPSON, *Judge:* The respondent determined the following deficiencies in the petitioners' Federal income taxes:

| Marion R. Hesse | | Stanley H. Hesse | |
|---|---|---|---|
| Year | Deficiency | Year | Deficiency |
| 1967 | $21,338.27 | 1967 | $26,752.54 |
| 1968 | 17,972.42 | 1968 | 21,092.04 |
| 1969 | 21,055.36 | | |

Because of concessions, the primary issue remaining for decision is whether payments made by Stanley H. Hesse to his former wife, Marion R. Hesse, pursuant to a written agreement incident to a divorce, were periodic payments made in discharge of a legal obligation incurred by Mr. Hesse because of the marital or family relationship. If so, we must decide the subsidiary issue of whether legal fees

incurred by Marion R. Hesse in obtaining such payments were ordinary and necessary expenses incurred for the production or collection of income.

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Stanley H. Hesse, is an individual who resided in Boca Raton, Fla., at the time his petition was filed in this case. He filed his Federal income tax return for the year 1967 with the district director of internal revenue, Jacksonville, Fla., and he filed his Federal income tax return for the year 1968 with the Internal Revenue Service Center, Chamblee, Ga. Neither of such returns was a joint return with Marion R. Hesse. Mr. Hesse keeps his accounts on the cash receipts and disbursements method.

The petitioner, Marion R. Hesse, resided in Bethlehem, Pa., at the time her petition was filed in this case. She filed her Federal income tax returns for the years 1967, 1968, and 1969 with the district director of internal revenue, Philadelphia, Pa. Mrs. Hesse keeps her accounts on the cash receipts and disbursements method.

The Hesses were married on January 1, 1944, and in the early part of 1966, Mr. Hesse separated from his wife with the intent of obtaining a divorce so that he could remarry.

At the time of the separation, Mr. Hesse was wealthy by virtue of gifts from his parents of at least 25,000 shares of stock in Harcourt, Brace and World, Inc. (Harcourt, Brace). During the period 1965 through 1967, the market price of the stock increased from $44 per share to $121 per share, and the value of Mr. Hesse's stock ranged from $1.5 to $3 million during the period. However, Mr. Hesse's wealth was not reflected in his income, as the stock in Harcourt, Brace paid low dividends, never in excess of $1 per share in any one year. Nor was Mr. Hesse's earned income large; for example, in 1966, he reported total earned income of $10,120.04.

The earnings of Mrs. Hesse during the course of her marriage were minimal. However, from 1951 onward, she received at least $119,000 in cash or stock as gifts from her parents, as distributions from trusts set up under the wills of her parents (both of whom were deceased by February 1959), and as gifts from the parents of Mr. Hesse. Thus, at the time of the separation, Mrs. Hesse owned stock in her father's two companies, which she had purchased for $48,000, and other investments having a fair market value in excess of $39,000, and she had contributed regularly to the petitioners' joint checking account, paid off $10,000 of the mortgage principal on the petitioners' residence, and financed a business venture in which she lost $3,000. Mrs. Hesse was also part owner of a commercial property in Allentown, Pa., which she and

her husband purchased as tenants by the entirety; Mrs. Hesse had contributed $15,000 toward the purchase price, and Mr. Hesse had contributed $18,000.

On March 24, 1966, Mr. Hesse filed a complaint for divorce *a vinculo matrimonii* (divorce a.v.m.) with the Court of Common Pleas of Northampton County, Pa. Under Pennsylvania law, a divorce a.v.m., often referred to as an absolute divorce, severs the marital relationship between husband and wife. It thereby enables the parties to remarry—which Mr. Hesse desired to do—and, except as may be provided by private agreement, terminates the husband's obligation to support his wife. Mr. Hesse's position with respect to a settlement at that time was that the assets owned by his wife were sufficient to provide for her support, and the only asset that he suggested giving her was his interest in the jointly held commercial property in Allentown.

On March 21, 1966, Mrs. Hesse contacted an attorney in Bethlehem, Pa., with regard to her husband's intention of filing a complaint for divorce, and on March 25, 1966, after such complaint was served, she met with such attorney. At that time, the position of Mrs. Hesse was that Mr. Hesse had used the family bank account for his business and put all the money he made back into the business; it was her money that took care of the home.

Thereafter, the parties, through their attorneys, entered into a period of extensive negotiations with respect to the rights and obligations each had against, or owed to, the other. Initially, the petitioners entered into a voluntary agreement concerning the support of their three children. According to the terms of such agreement, Mr. Hesse paid Mrs. Hesse a total of $75 per week. At the same time, the petitioners agreed that Mrs. Hesse would retain $25 per week from the rental income of the Allentown commercial property as support.

In an attempt to secure a negotiated settlement, the attorney, on behalf of Mr. Hesse, first offered to pay $50,000 in cash to Mrs. Hesse. Such offer was refused by the attorney for Mrs. Hesse, who indicated that he would recommend settlement for $150,000 in stock or cash. At that time, Mrs. Hesse demanded $200,000. On April 25, 1966, she entered into a contingent fee agreement with her attorney, in which she was to pay him 10 percent of the value of any assets received in a settlement arising from the divorce action. By August 1966, the demands of Mrs. Hesse increased, and her position with respect to a settlement was to accept no less than $500,000. She justified her demand for this amount by pointing to certain statements made by Mr. Hesse in which he stated that he would give one-half million dollars to be rid of his wife. It was the position of Mrs. Hesse that if her demands were not accepted by her husband, her attorney was to institute an

action for divorce *a mensa et thoro* (divorce a.m.e.t.). Under Pennsylvania law, a divorce a.m.e.t., often referred to as a limited divorce or a legal separation, permits the wife to obtain permanent alimony and, because it does not dissolve the marriage, prevents remarriage by either party. Thus, if such a divorce were granted, Mr. Hesse would be unable to remarry.

Mr. Hesse was informed on August 30, 1966, of the $500,000 demand by his wife. He rejected the demand, claiming that to raise such money, he would have to sell some of the Harcourt, Brace stock and that he could not sell such stock without the authorization of his parents, which they refused to give. On September 1, 1966, the attorney for Mrs. Hesse was informed of the rejection of her demand.

On November 28, 1966, Mrs. Hesse filed a complaint for divorce a.m.e.t. with the Court of Common Pleas of Northampton County, and in it she requested support to the extent of one-third of the annual income derived from her husband's estate and labor. Mr. Hesse was advised by counsel that he had little or no grounds for obtaining a divorce a.v.m. from Mrs. Hesse, and that she had enough evidence to support an action either for divorce a.v.m. or divorce a.m.e.t. Mr. Hesse was further advised that because of his extensive wealth, his wife would very likely be able to obtain an order for support amounting to between $25,000 and $40,000 per year. It was the opinion of counsel that in determining the scope of Mr. Hesse's responsibility to provide support for his wife, the court would not look merely at the relatively low income derived from his Harcourt, Brace stock, but rather would determine the income that could be earned if the value of such stock was invested in income-producing property. In the light of this advice, the position of Mr. Hesse changed, and by March 1967, he was willing to pay either for the support of his wife or to agree to a cash settlement of approximately $300,000. However, Mr. Hesse still maintained that he was the wronged party, and he still felt that the demands of Mrs. Hesse were excessive in light of the needs and other incomes of both parties.

The attorneys continued to negotiate. Counsel for Mr. Hesse, who had earlier offered a settlement involving $6,000 per year as support, guaranteed by a collateral deposit of $300,000 worth of stock, increased the offer, in April 1967, to $7,200 per year, guaranteed by a collateral deposit of $350,000 worth of stock. Both offers were made to ensure the annual payments incurred by Mr. Hesse were commensurate with his actual income. On the other hand, counsel for Mrs. Hesse made it clear that his client still demanded $500,000, but that for the convenience of her husband, she would allow payment to be extended over a period of 5 years. However, the bargaining position of Mrs.

Hesse was not fixed, and at times, she demanded $500,000 worth of stock or $500,000 in cash payable in one lump sum.

By October 1967, the parties reached a compromise and signed an agreement which was contingent upon the entry of a decree of divorce a.v.m. In their agreement, the parties expressed a "desire to define their future relationship to each other and to agree upon a full and complete settlement of their property rights"; and accordingly, the agreement addressed itself to the various rights of the couple. With respect to a cash settlement, it was agreed that Mrs. Hesse was to be paid a liquidated sum of $500,000, the first payment to be made in cash 10 days after entry of a final decree of divorce a.v.m., and the remainder to be paid in 10 annual installments of $45,000 each. The obligation to make the annual payments of $45,000 was to be secured by an escrow deposit of Harcourt, Brace stock worth $450,000, and the payments were to be made regardless of whether either party died.

With respect to other items, the agreement called for Mr. Hesse to pay $25 weekly support for each child until such child reached the age of 18 years, or entered college, and thereafter to provide each child with a 4-year, approved college education. Both parties confirmed the irrevocable status of prior gifts of stock to each of the children. The family residence was to be the sole and separate property of Mrs. Hesse, and the commercial property in Allentown was to be the sole and separate property of Mr. Hesse, subject to the understanding that his wife was to receive $15,000 of the proceeds in the event such property was sold. All personalty at the family residence was given to Mrs. Hesse, except for a few personal and hobby items which were retained by Mr. Hesse.

Mrs. Hesse waived her right to any support for herself and the right to costs, counsel fees, or alimony, except that Mr. Hesse agreed to pay any such reasonable counsel fee incurred by his wife in connection with the proceedings. Each party released and waived all rights of curtesy, dower, statutory share in the other's estate, and the right to take against the will of the other; each party agreed to assume full responsibility for all his own debts and to indemnify the other against claims resulting from his debts; and each party waived and released all claims, debts, and causes of action against the other except those arising out of the agreement and any extant causes for a divorce.

There was no designation in the agreement as to what consideration was being exchanged by each party for each right or property, and there was no label as to what each right or property represented except that the $25 weekly payments to the children were support.

After the agreement was executed, the action for divorce a.m.e.t.

brought by Mrs. Hesse was amended on October 23, 1967, to an action for divorce a.v.m., and an appearance by counsel was entered for Mr. Hesse. All the materials called for under the escrow terms of the agreement were deposited in escrow, and a final decree of divorce was entered on December 11, 1967.

Mr. Hesse thereafter paid Mrs. Hesse $50,000 in 1967 and $45,000 in both 1968 and 1969. Mr. Hesse also paid $5,000 to Mrs. Hesse's attorney, representing his counsel fee in the divorce proceedings. Mrs. Hesse paid her attorney $10,000 in 1967 in accordance with the contingent fee agreement and executed a note for $40,000 payable annually in the amount of $5,000 per year. Under the terms of such note, Mrs. Hesse paid her attorney $10,000 in 1969 representing payment for the years 1968 and 1969.

In his notices of deficiency, the respondent has taken inconsistent positions in order to assure the consistent treatment of the payments by Mr. Hesse to Mrs. Hesse. In the notice of deficiency sent to Mr. Hesse, the respondent determined that the payments made in 1967 and 1968 were not alimony payments but were payments under a property settlement. In his notice of deficiency to Mrs. Hesse, he determined that the payments which she received in 1967, 1968, and 1969 were periodic payments of alimony taxable to her under section 71(a) of the Internal Revenue Code of 1954.[1]

OPINION

We will consider first whether the payments at issue were periodic payments made in discharge of a legal obligation incurred by Mr. Hesse because of the marital or family relationship.

This issue involves sections 71 and 215. In pertinent part, section 71(a)(1) provides:

If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

Section 215 allows the husband to deduct amounts which are paid during his taxable year and which are includable in the gross income of the wife by virtue of section 71.

Both petitioners recognize that the payments at issue were periodic. Although such payments were in discharge of a principal sum specified in the decree, they fall within the exception of section 71(c)(2), because they were payable over a period in excess of 10 years from

---

[1] All statutory references are to the Internal Revenue Code of 1954.

the date of the agreement. However, Mrs. Hesse contends that such payments were made in fulfillment of a property settlement agreement and were intended as compensation for her property rights. She argues that many of the factors which generally indicate a property settlement are present in the agreement executed by the petitioners. On the other hand, Mr. Hesse argues that the payments were made in recognition of Mrs. Hesse's right to support. He contends that Mrs. Hesse had but one valuable right for which she was not compensated in other sections of the agreement, that being her right to support, and that the negotiations clearly indicate that the $500,000 at issue was intended as compensation for the relinquishment of such right. The respondent has taken the stance of a disinterested stakeholder.

We have given careful consideration to all the relevant evidence in the record in order to determine the purpose of the payments at issue, and on the basis of such consideration, we find that the payments were intended to be, and actually were, in lieu of support.

The legislative purpose behind sections 71 and 215 is uniformity of treatment for amounts paid in the nature of alimony, or in lieu of alimony, regardless of variances in the laws of the different States. H. Rept. No. 2333, 77th Cong., 2d Sess., 1942–2 C.B. 427; S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 568; *Taylor* v. *Campbell*, 335 F. 2d 841 (C.A. 5, 1964); *Bardwell* v. *Commissioner*, 318 F. 2d 786, 789 (C.A. 10, 1963), affirming 38 T.C. 84 (1962); *Grant R. Bishop*, 55 T.C. 720, 724 (1971); *Thomas E. Hogg*, 13 T.C. 361 (1949). The regulations promulgated under section 71 provide that such section applies only to payments made because of the family or marital relationship in recognition of the general obligation of support. Sec. 1.71–1(b)(4), Income Tax Regs. Payments made in recognition of such obligation are includable in the gross income of the wife under section 71 regardless of the absence of alimony under State law. See *Taylor* v. *Campbell, supra; Bardwell* v. *Commissioner, supra; Thomas E. Hogg, supra; Tuckie G. Hesse*, 7 T.C. 700 (1946). On the other hand, payments which are in the nature of a division of property are capital in nature, and therefore, not subject to the provisions of section 71 even though periodic and incident to a divorce. *Ernest H. Mills*, 54 T.C. 608 (1970), affd. 442 F. 2d 1149 (C.A. 10, 1971); *Lewis B. Jackson, Jr.*, 54 T.C. 125 (1970); see also *Wilma Thompson*, 50 T.C. 522, 525 (1968).

Whether the payments in fact represent alimony or are in consideration of an interest in property is a question that turns upon the facts, and not upon any labels that may or may not have been placed upon them. *Ann Hairston Ryker*, 33 T.C. 924, 929 (1960); see also *Taylor* v. *Campbell, supra* at 845; *William M. Joslin, Sr.*, 52 T.C. 231, 236

(1969), affd. 424 F. 2d 1223 (C.A. 7, 1970); *Blanche Curtis Newbury*, 46 T.C. 690, 694 (1966). One factor looked to in determining the nature of a particular payment has been the negotiations preceding the divorce. See *Enid P. Mirsky*, 56 T.C. 664, 673–674 (1971); *Grant R. Bishop*, *supra* at 725–726; *Floyd H. Brown*, 16 T.C. 623, 631 (1951). Here, such factor indicates the payments were in lieu of alimony or support.

When the circumstances of this case are examined, it is altogether clear that Mrs. Hesse had a claim for substantial support and that the $500,000 was paid to her in satisfaction of that claim. Although Mr. Hesse filed the first action for divorce, he lacked the grounds to secure one. When Mr. Hesse refused to agree to the settlement demand by Mrs. Hesse, she then filed her action for a divorce a.m.e.t and her claim for support. Thereafter, Mr. Hesse's attorney advised him as to the weakness of his position and his potential liability for the payment of support, and the offers of support increased. Clearly, Mrs. Hesse had no basis for claiming $500,000, other than her claim for support, and she relinquished no right of significant value other than her claim for support. Compare *Lewis B. Jackson, Jr.*, *supra*, in which the wife had no right to support and such fact was an indication that the agreement represented a property settlement.

Furthermore, for the payments at issue to have been in discharge of a division of property, it must be demonstrated that Mrs. Hesse had an interest in property which she was relinquishing and for which the $500,000 was compensation. *Riddell* v. *Guggenheim*, 281 F. 2d 836, 840–841 (C.A. 9, 1960); see, e.g., *Ernest H. Mills*, *supra*. No such interest has been demonstrated by Mrs. Hesse. She retained all the property which had been given to her and which she held in her own name. The record indicates that the property in which Mrs. Hesse had an interest with Mr. Hesse was limited to the family residence, which was in her name and which was paid for with her money, and the contents and furnishings of such residence; both were acknowledged to be hers in other paragraphs of the agreement. She also had an interest in the commercial property in Allentown, and although such property was given to Mr. Hesse, it was agreed that in the event of sale, Mrs. Hesse was to receive $15,000 of the proceeds. These were the only properties dealt with in the agreement.[2] Pennsylvania is not a community property State, and Mrs. Hesse has shown no interest in the separate estate of Mr. Hesse, over and beyond the request for support, based on the income of such property. See *William M. Joslin, Sr.*, *supra* at 236–237;

---

[2] There is some indication in the record that the petitioners may have jointly owned property in Florida and that such property may have been given to Mr. Hesse in a separate agreement or transaction; however, neither petitioner has alluded to it, and the record is not clear.

compare *Ernest H. Mills, supra; Lewis B. Jackson, Jr., supra.* Any future rights that she may have had in his property were speculative and of no significant value, and there is no indication that they were the subject of the negotiations which led to the agreement.

Although Mrs. Hesse contends that she wanted to be repaid for the contributions which she made to the family expenses during the course of the marriage, she has not demonstrated the extent of such expenditures. Moreover, there is no evidence indicating that the amount of such expenditures was computed and that the demand for $500,000 was in any way related to the amount of such expenditures. Compare *McCombs* v. *Commissioner*, 397 F. 2d 4 (C.A. 10, 1968), affirming a Memorandum Opinion of this Court; *Bernatschke* v. *United States*, 364 F. 2d 400 (Ct. Cl. 1966) ; *Ernest H. Mills, supra; Lewis B. Jackson, Jr., supra* (all of which involved payments that were related in amount to the property interest of the wife).

Mrs. Hesse argues that in this case many factors indicate the agreement was a property settlement. She points to the presence of a fixed principal sum in the agreement; the absence of contingencies which would decrease or stop payment of such principal sum in the event of her remarriage, the death of either party, or a change in the status of Mr. Hesse's finances; the presence of a security arrangement to ensure payment by Mr. Hesse; and the small weekly sum she received as support during the course of negotiations. See, e.g, *McCombs* v. *Commissioner, supra; Bernatschke* v. *United States, supra; Soltermann* v. *United States*, 272 F. 2d 387 (C.A. 9, 1959) ; *Grant R. Bishop*, 55 T.C. 720 (1971) ;[3] but see *Phinney* v. *Mauk*, 411 F. 2d 1196 (C.A. 5, 1969) ; *Porter* v. *Commissioner*, 388 F. 2d 670 (C.A. 6, 1968), affirming per curiam a Memorandum Opinion of this Court; *Wilma Thompson*, 50 T.C. 522 (1968). Although these factors have been relied on by this and other courts in determining that certain agreements were in the nature of property settlements, such factors are not always controlling; and in this case, they merely indicate that Mrs. Hesse was in a substantially stronger bargaining position than was Mr. Hesse.

Accordingly, for the reasons stated, we hold that the payments in issue were periodic payments in lieu of alimony and are includable in the gross income of Mrs. Hesse and deductible by Mr. Hesse.

In view of that holding, we reach the subsidiary issue of whether the legal fees paid by Mrs. Hesse to secure the agreement to pay her $500,000 are deductible under section 212(1). In pertinent part, section 212(1) allows an individual to deduct all the ordinary and necessary expenses paid during the taxable year for the production or collection of income. This Court has held in the past that amounts paid by a wife

---

[3] For a recent example, see *George C. DeSmyter*, T.C. Memo. 1973–90.

to her attorneys, allocable to obtaining alimony includable in her gross income, are deductible under section 212(1). *Ruth K. Wild*, 42 T.C. 706 (1964) ; see *Jane U. Elliott*, 40 T.C. 304, 314 (1963) ; *Elsie B. Gale*, 13 T.C. 661 (1949), affd. 191 F. 2d 79 (C.A. 2, 1951).

Mrs. Hesse entered into a contingent fee agreement with her attorney in which she was to pay him 10 percent of the value of any assets she received in a settlement. This agreement was separate and distinct from the arrangement to pay the attorney for his services in the divorce proceedings; that fee was paid by Mr. Hesse. In accordance with the contingent fee agreement, Mrs. Hesse paid her attorney $10,000 in 1967 and under the terms of the promissory note she paid the attorney $10,000 in 1969, representing payment for the years 1968 and 1969. Because the payments received by Mrs. Hesse under her settlement with Mr. Hesse were includable in her gross income under section 71(a), the fees she paid her attorney to obtain such payments are deductible. See sec. 1.262–1(b)(7), Income Tax Regs. Because Mrs. Hesse uses the cash method of accounting, such fees are deductible in the years actually paid.

*Decisions will be entered under Rule 50.*