BETTY ANN DERICKSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Derickson v. Commissioner
Docket No. 6018-74.
United States Tax Court
T.C. Memo 1976-297; 1976 Tax Ct. Memo LEXIS 104; 35 T.C.M. (CCH) 1325; T.C.M. (RIA) 760297; September 22, 1976, Filed *104 Held: Monthly payments received by the petitioner under a settlement agreement incident to her divorce are includable in her gross income under section 71, I.R.C. 1954, because they are in the nature of support and may be paid over a period in excess of 10 years. George W. Mott, for the petitioner. Elsie Hall, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in the petitioner's Federal income tax for the calendar years 1969, 1970, and 1971, in the respective amounts of $1,181.51, $1,010.07, and $925.39. The sole issue presented for decision is whether monthly installments received *105 by petitioner from her former husband are includable in her gross income as periodic payments under section 71, Internal Revenue Code of 1954. [1]/ FINDINGS OF FACT All of the facts have been stipulated by the parties. The stipulation of facts with accompanying exhibits is incorporated herein by this reference. A summary of the facts bearing upon the issue is set forth below. Petitioner, Betty Ann Derickson, is an unmarried individual whose legal residence at all times pertinent, including the time the petition was filed herein, was 2121 East Madison Street, South Bend, Indiana. Petitioner did not file Federal income tax returns for the calendar years 1969, 1970, and 1971. Petitioner and Linn W. Derickson (hereinafter Derickson) were formerly husband and wife. On December 15, 1967, petitioner filed a complaint for divorce in the St. Joseph Superior Court for the State of Indiana. Derickson cross-complained for divorce on March 25, 1968. In anticipation of the impending dissolution of their marriage, on September 13, 1968, the *106 parties executed a document entitled "Property Settlement and Other Agreement." The agreement purported to direct disposition of all the assets and liabilities of the parties and made other provisions discussed more fully hereinafter. The parties concluded the agreement with the following provision: 18. An executed copy of this agreement shall be filed in the divorce action between the parties upon it being approved by the court, and shall become final and binding upon the parties on the day of such court approval thereof. On October 7, 1968, an absolute divorce was granted to petitioner. The decree provided in part: And now the parties also tender form of proposed form of property [sic] settlement agreement executed by the parties, which the Court examines and endorses its approval thereon and is to be entered into the record of this Court and is part of the judgment of this Court * * *. At the time of their marriage on September 9, 1942, neither petitioner nor Derickson owned a significant amount of property. Throughout their union Derickson made adequate provisions for their support, and petitioner devoted her attention to care of their home and four children. During *107 this same period, the Dericksons accumulated several parcels of investment property in addition to a family residence. Petitioner acquired no property during the marriage from any source other than her husband. At the approximate time of their divorce, the Dericksons had a total net worth of $48,539.00, reconstructed by petitioner and respondent as follows: RECONSTRUCTION OF NET WORTH AS OF SEPTEMBER 13, 1968 Assets
Real Estate: 1138 N. Johnson
$ 10,000.00
1127 N. Johnson
14,000.00
139 W. Mishawaka
16,000.00
411 W. Grove
25,000.00
2121 E. Madison
33,000.00
Lucy's Restaurant
10,000.00 [2]/
Automobiles: 1960 Rambler
200.00
1966 Chevrolet
1,500.00
Furniture and Furnishings
2121 E. Madison
4,000.00
Rental Properties
5,790.00
Cash in Bank
550.00 [3]
Total Assets
$120,040.00
Liabilities
Real Estate Mortgages: 1138 N. Johnson
$ 4,536.00
1127 N. Johnson
6,424.00
139 W. Mishawaka
411 W. Grove
21,835.00
2121 E. Madison
22,028.00
Lucy's Restaurant
3,239.00
Automobiles: 1966 Chevrolet
709.00
Liabilities listed in "Property Settlement
and Other Agreement": Warren Bank
3,250.00
American Bank & Trust Co.
1,500.00
National Bank & Trust Co.
1,500.00
First National Bank
500.00
Sears Roebuck & Co.
30.00
Dr. and Mrs. Hill
597.00
Marshall Fields
201.00
Associates
1,250.00
Mrs. Schlenck
437.00
Attorney Fees: Joseph Roper
2,019.00
Robert Zimmerman
1,446.00
Total Liabilities
$71,501.00
Net Worth
$48,539.00
*108 As a result of the divorce decree and pursuant to the terms of the agreement approved therein, petitioner received (1) the East Madison Street residence ($33,000.00); (2) the furnishings situated therein ($4,000.00); and (3) the 1966 Chevrolet automobile ($1,500.00). She was relieved of all liabilities except the mortgage encumbering the East Madison Street residence after the date of the divorce ($22,028.00). All net assets received in accordance with this portion of the agreement totaled $16,472.00. Derickson was awarded (1) the four lots of improved real estate held as rental properties ($65,000.00); (2) the furnishings situated therein ($5,790.00); (3) Lucy's Restaurant ($10,000.00); and (4) the 1960 Rambler automobile ($200.00). Derickson became obligated to satisfy (1) the mortgages *109 encumbering the rental properties ($32,795.00), Lucy's Restaurant ($3,239.00), and the 1966 Chevrolet automobile ($709.00); (2) petitioner's attorneys' fees ($3,465.00); and (3) all other liabilities accruing until the date of divorce ($9,974.00). He received net assets totaling $31,517.00 in accordance with this portion of the agreement. In addition, the agreement obligated Derickson to make payments to petitioner as follows: 6. For a period of ten (10) years and one (1) month from the date of the granting of a divorce, if one is granted, FIRST PARTY shall pay to SECOND PARTY the sum of SIX HUNDRED EIGHTY-SEVEN and 50/100 ($687.50) DOLLARS monthly, the first monthly payment becoming due and owing on the day of the granting of a divorce. It is understood that the full amount which will become due and owing from FIRST PARTY to SECOND PARTY under this paragraph is EIGHTY-THREE THOUSAND ONE HUNDRED EIGHTY-SEVEN and 50/100 ($83,187.50) DOLLARS. * * *
14. The provisions hereinafter made for the making of monthly payments by FIRST PARTY to SECOND PARTY shall not be deemed terminated either by the death of FIRST PARTY, the death of SECOND PARTY, or the remarriage of SECOND *110 PARTY. [4]/ The payments to petitioner were secured by liens on the real estate retained by Derickson, as well as any real estate subsequently acquired by him. Also, provision was made for the proceeds of certain life insurance policies on Derickson's life to satisfy any remaining obligation to petitioner in the event of Derickson's untimely death. Pursuant to numerical paragraph 11 of the "Property Settlement and Other Agreement," compliance with its terms was to be deemed a "complete discharge of all of [Derickson's] obligations to [petitioner] arising out of their marital relationship or otherwise * * *." During the divorce proceedings, petitioner was represented by two attorneys who negotiated the terms of the "Property Settlement and Other Agreement" with Derickson and his representative. The parties to this action have stipulated that the factors shaping the final agreement, which was drafted by Joseph A. Roper, petitioner's second attorney, were: (1) Derickson had to provide for petitioner's *111 future support because she was not equipped to provide for her own support but wished to run her own household; (2) Derickson's then current and potential income limited the amount which he could reasonably be expected to pay; (3) Derickson wanted a divorce; and (4) Derickson's net worth. The amount of any monthly payments, their duration, and whether they would be subject to contingencies of death or remarriage were also considerations of the parties. Proposals subsequently rejected in favor of the aforementioned terms indicate that a payment period in excess of 10 years was consistently under deliberation. In conformance with the agreement approved by the St. Joseph Superior Court, Derickson paid to petitioner monthly installments of $687.50 in 1969, 1970, and 1971. He also took deductions totaling $8,250.00 annually on his own Federal income tax returns for those years. Respondent, assuming the position of stakeholder, has asserted deficiencies against Derickson because of the claimed deductions. That case, however, is not presently before us. OPINION In his notice of deficiency respondent determined that the total annual payments of $8,250.00 received by petitioner *112 from her former husband were includable in her gross income under section 71(a)(1) by virtue of section 71 (c)(2). Section 71(a)(1)[5]/ provides that if a wife is divorced from her husband, she must include in her gross income periodic payments received in discharge of a legal obligation arising out of the marital relationship and imposed on the husband under the decree or a written instrument incident to such divorce. Installment payments received in discharge of such an obligation, the principal sum of which is specified in the decree or separate instrument, however, are not considered periodic payments unless they are payable over a period exceeding 10 years from the date of the decree or separate agreement. Section 71(c). [6]
*113 Petitioner's primary position is that the monthly installments are not properly classifiable as periodic payments because they are not payable over a period exceeding 10 years from the date of the divorce decree. Petitioner alternatively contends that the disputed payments were not received in discharge of an obligation imposed on her former husband "because of the marital or family relationship," but rather represented installments in settlement of her interest in the assets accumulated during the marriage. Regardless of the payment period, Section 71 does not require installment payments received in satisfaction of a division of property to be included in the recipient's gross income. Lambros v. Commissioner,459 F. 2d 69 (C.A. 6, 1972); Enid P. Mirsky, 56 T.C. 664, 672 (1971). Whether the instant payments are in the nature of a property settlement is a factual question to be determined from the attendant facts and circumstances, including but not limited to the intent of the parties to the agreement. Lambros v. Commissioner,supra; Houston v. Commissioner,442 F. 2d 40 (C.A. 7, 1971), affirming *114 Mary Schwab,52 T.C. 815 (1969). William C. Wright,62 T.C. 377 (1974), on appeal (C.A. 7). When the circumstances of this case are considered, it becomes readily apparent that the disputed payments are in the nature of support and do not represent a division of property. At the approximate time of their divorce, petitioner and Derickson had a total net worth of $48,539.00. All of the property had been accumulated during their marriage and was owned jointly. [7]/ Pursuant to their agreement and the divorce decree, net assets equal to roughly one-third of the total net worth were awarded to petitioner, i.e. the family residence encumbered by a mortgage, the household furnishings and the newer of the two family automobiles. In addition petitioner was awarded the principal sum of $83,187.50 to be received in equal monthly installments of $687.50. Even discounting the monthly payments to their present value as suggested by petitioner (at 6 percent, $62,372), she was awarded a sum in excess of the total net worth. Aside from the difficulty of rationalizing how a division of property could result in one party taking value in excess of the *115 total property subject to being divided, petitioner has not demonstrated that she relinquished property rights of such value in exchange for the principal sum - something she would have to do in order for the monthly payments to be in discharge of a division of property. Marion R. Hesse,60 T.C. 685, 692 (1973), affd. (by Order) 511 F. 2d 1393 (C.A. 3, 1975), certiorari denied 423 U.S. 834 (1975). Petitioner argues that the language in the agreement and divorce decree referring to a "property settlement" supports her contention that the installment payments were in fulfillment of her property rights. We find her argument unpersuasive. The particular payments in question were not individually labelled, nor did the document have sub-headings dealing with different topics. The document itself was entitled "Property Settlement and Other Agreement," and stated explicitly therein was that conformance with its provisions was to be deemed a complete discharge of all of Derickson's obligations to petitioner "arising out of the marital relationship or otherwise * * *." In any event we are not bound in *116 our determination by labels attached by the parties or references to the agreement in the divorce decree. William M. Joslin, Sr.,52 T.C. 231 (1969), affd. 424 F. 2d 1223 (C.A. 7, 1970). Petitioner also emphasizes the terms of the agreement providing a fixed principal sum secured by liens and life insurance policy proceeds, payment of which is not subject to contingencies of death or remarriage of either party. These are indeed factors which the courts have heretofore considered in resolving the nature of installment payments received incident to a divorce. Marion R. Hesse,supra, at 693. However, what we said in Wilma Thompson,50 T.C. 522, 526, is applicable here: "Where the wife has property of her own, such provisions * * * are often regarded as persuasive that payments to the wife represent a property settlement rather than support payments * * *. But that is not the situation here." Petitioner had acquired no property from any source other than her husband. The parties herein have stipulated that in arriving at the final terms of the "Property Settlement and Other Agreement," a point of negotiation *117 was that Derickson would have to provide for petitioner's future support because she was unable to do so but wished to maintain her own household. We think the aforementioned award to petitioner represents the realization of this point of negotiation. The fact that a division of assets appears unequal may often indicate that installment payments were intended to effect a more equitable property settlement. However, an equal apportionment is not necessary, and the allocation here is not so insubstantial as to deprive the division of assets of any substance. Petitioner has advanced no evidence that would permit us to conclude that any portion of the monthly installments was intended to equalize her share of the assets subject to division at the time of divorce. In the absence of any such evidence, we are convinced that the entire monthly installments of $687.50 represent payments to petitioner in the nature of support for Federal income tax purposes. Having determined that the payments are not in discharge of petitioner's property rights, we must now decide whether they are periodic payments includable in her gross income because payable over a period exceeding 10 years from the *118 date of the agreement or divorce decree. Section 71(c). To determine whether a payment period is in excess of 10 years, it is often necessary to determine the date when the obligation to pay came into existence and the date when the last installment is due and payable.The parties herein differ in their computation of both dates. In view of our conclusion that the last installment under this agreement is payable without default up to and including November 7, 1978, however, it is unnecessary that we resolve whether the obligation to pay arose on September 13, 1968, the date the agreement was executed, or October 7, 1968, the date the divorce was granted. The agreement between petitioner and Derickson expressly provided for a payment period of "ten (10) years and one (1) month from the date of the granting of a divorce," the first payment "becoming due and owing on the day of the granting of a divorce," with "monthly" payments of $687.50 thereafter until the full amount of $83,187.50 was paid. The agreement did not provide a more specific payment schedule. Petitioner's position is that the agreement contemplates 121 monthly payments of $687.50. Because the first payment became *119 due and owing on October 7, 1968, the date of the divorce decree, the remaining 120 payments fall due on the 7th of each month thereafter until October 7, 1978 - a payment period not in excess of 10 years. Marie M. Newman,26 T.C. 717 (1956), affd. 248 F. 2d 473 (C.A. 8, 1957). We think the intent of the parties was otherwise. The parties consistently negotiated on the basis of monthly payments to exceed a period of 10 years. Inclusion in the agreement of the language calling for a payment period of 10 years and 1 month is strong evidence, in light of section 71(c), that the parties intended the payments to be includable in petitioner's gross income. Ann HairstonRyker,33 T.C. 924, 929 (1960). Petitioner argues that the payment period called for in the agreement is inconsistent with 121 monthly installments of $687.50. While we agree that the terms of the agreement lack precision, we do not find them inconsistent. It does no violence to the agreement to construe its terms as providing that the last installment is payable without default on or before November 7, 1978. Accord, United States v. Reis.214 F. 2d 327 *120 (C.A. 10, 1954). In Reis the court concluded that the language in the divorce decree there under scrutiny, "payable Three Hundred Dollars ($300.00) per month commencing April 1, 1947," had the effect of making the monthly payments of alimony due on the first day of each month commencing April 1, 1947, but payable without default up to and including the last day of the month. In the absence of a more specific payment schedule and in light of the clear intent of the parties to the agreement herein, we conclude that the payment period pursuant to the "Property Settlement and Other Agreement" is in excess of 10 years. Therefore the monthly installments constitute periodic payments which are includable in petitioner's gross income. Section 71 (c)(2). Decision will be entered for the respondent. Footnotes
1. /↩ Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954, as amended.
2. The record is unclear as to the nature of the Dericksons' ownership interest in Lucy's Restaurant, and there is some indication that petitioner disclaimed any personal interest therein. Nevertheless, nothing herein turns on the precise claims that petitioner may have had to this particular asset. ↩
3. The record does not indicate the disposition of the $550.00 in cash.↩
4. /↩ Separate provision was made for petitioner to have custody and Derickson to pay for the support and college education of the two remaining minor children.
5. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
6. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * *
(c) Principal Sum Paid in Installments.-- (1) General Rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period For Payment Is More than 10 Years.-- If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as period ic payments for purposes of subsection (a), but (in the case or any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.↩
7. / But see supra↩ footnote 2.