ROBERT L. WARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 16209-80.
United States Tax Court
T.C. Memo 1982-575; 1982 Tax Ct. Memo LEXIS 168; 44 T.C.M. (CCH) 1299; T.C.M. (RIA) 82575; September 30, 1982. Robert L. Ward, pro se. David A. Hampel, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1978 in the amount of $2,222.75. Petitioner, in his petition, claimed an overpayment in the amount of $1,593.45. The issues for decision are (1) whether a *169 payment by petitioner to his ex-wife of $8,519.03 from the net proceeds of the sale of a house which had previously been their residence is deductible as alimony; and (2) whether petitioner realized a long-term capital gain or a loss on the sale of his one-half joint ownership interest in the house, and if a gain was realized, the amount of the gain, and if a loss was realized, whether it is deductible by petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert L. Ward (petitioner) was a resident of Dallas, Texas, at the time of the filing of his petition in this case. He filed an individual Federal income tax return for the calendar year 1978. This return showed that it was signed on January 9, 1979. On March 2, 1979, petitioner filed an Amended U.S. Individual Income Tax Return. The explanation given of the change in this return from the return originally filed was-- Additional alimony payment of $8,514.66 paid in August 1978 based on Swendseen case (attached.) Similar case of M. R. Heese [sic], 60 T.C. 685 (acq), aff'd by CA-3 cert denied taxpayer 423 US 834. Also, U.S.Treasury Regulation 1.71-1(b)(4) *170 , attached. Petitioner and Bonnie Anne Broome were married in 1964. During the years 1974, 1975 and 1976, and part of 1977, and for sometime prior to 1974, they resided in Louisiana.On February 4, 1977, petitioner and Bonnie Anne Broome Ward purchased a residence at 1608 Washington St., Edmond, Oklahoma, for $69,500. [1] The amount of gain from the sale of their prior residence, to be deferred in accordance with the provisions of section 1034, [2] was $21,840. Accordingly, at the date of the purchase of the new residence in Edmond, Oklahoma, the Ward's adjusted basis therein computed under the provisions of section 1034(g) was $47,660. Capital improvements to the property in the amount of $2,574 were paid from separate funds of petitioner. Petitioner and Bonnie Anne Broome Ward purchased the house in Edmond, Oklahoma, as joint tenants and not as tenants in common with right of survivorship. *171 On September 16, 1977, Bonnie Anne Broome Ward filed a petition for divorce in the District Court of Oklahoma County, Oklahoma. On September 19, 1977, the District Court of Oklahoma County issued a temporary order which provided, among other things, that petitioner pay $800 a month to the clerk of the court to assist his wife with the purchase of groceries for herself and their children, and to help with other miscellaneous living expenses commencing on or before October 1, 1977. On October 3, 1977, petitioner moved from the home in which he and his wife and children were living at 1608 Washington St., Edmond, Oklahoma, but Bonnie Anne Broome Ward and the four children of petitioner and Mrs. Ward continued to reside there. On April 26, 1978, petitioner and Bonnie Anne Broome Ward were divorced. The divorce decree provided that Bonnie Anne Broome Ward would have the custody of the four minor children of petitioner and Mrs. Ward and for visitation rights by petitioner. It provided that petitioner pay to Mrs. Ward for the care and support of their minor children the sum of $150 per month per child, beginning in May 1978, for a total of $600 per month until further order of the *172 court or until the children reached the age of majority or were emancipated. The decree provided that payment of child support should be by $470.36 of the total $600 per month being paid on the mortgage indebtedness or note on the residence at 1608 Washington St., Edmond, Oklahoma, and the balance to be paid to Mrs. Ward. The decree also provided for payment of alimony in lieu of support payments of $370 a month to be paid to Mrs. Ward for 58 months and a final payment of $140 for a total of $21,600. The alimony in lieu of support was to terminate automatically on death or remarriage of Mrs. Ward, but not on the death or remarriage of petitioner. Paragraph IV of the divorce decree provided as follows: IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties herein during their marriage have accumulated and are possessed of certain property as set forth in Petition for Divorce filed in the above captioned case. That the parties have orally agreed to divide and give full title and possession and control of the property as set forth below: To the Plaintiff, Bonnie Anne Broome Ward: 1. One 1971 Pontiac automobile. 2. All household goods and effects (including all *173 siver) except as to items specifically designated as Defendant's property below. 3. All proceeds in any accounts presently in Plaintiff's name. 4. All personal items or effects. 5. Three-fourth (75%) of all net proceeds from the sale of real estate and residence and fixtures owned by the parties hereto at 1608 Washington Street, Edmond, Oklahoma, more particularly described as: Lot Eleven (11), Block Eleven (11), Timber Ridge Second Addition, City of Edmond, Oklahoma County, Oklahoma, according to the recorded plat thereof; and that the Plaintiff is to have absolute authority and control as to the sale of said real estate, residence and fixtures, so long as the sale is at Fair Market Value and the Defendant will cooperate fully in the sale of said real estate, residence, and fixtures including but not limited to the execution of all necessary documents pertaining to said sale. [Decree did not contain an Item No. 6.] 7. Any and all retirement benefits personally earned or accrued by Plaintiff through her own employment. To the Defendant, Robert Lacy Ward: 1. One 1970 Plymouth Automobile. 2. All household goods and effects presently in Defendant's possession *174 and the following items in Plaintiff's possession: a. Certain books. 3. Proceeds or balances in all accounts held by Defendant in his own name or jointly with Plaintiff. 4. All personal items and effects. 5. All income tax refunds due from 1977 returns. 6. One-fourth (25%) of all net proceeds from the sale of real estate and residence and fixtures owned by the parties hereto, as described above and particularly described as: Lot Eleven (11), Block Eleven (11), Timber Ridge Second Addition, City of Edmond, Oklahoma County, Oklahoma, according to the recorded plat thereof. 7. Any and all bonds owned or held by the parties whether jointly or severally including but not limited to C Series E Bonds. 8. Any and all cash value or proceeds of insurance policies owned or held by the parties hereto whether jointly or severally, including but not limited to Life and Accident Insurance. 9. Any and all shares of stock owned or held by the parties hereto, whether jointly or severally, including but not limited to shares of stock in Investors Diversified Services, E.A.C. and Reliance Group. 10. Any and all retirement benefits personally accrued or earned by Defendant. *175 That title to the aforesaid real property shall remain in joint-tenancy as it is on the date of issuance of this Decree until sold or transferred. The aforesaid real property may not be sold or transferred prior to August 2, 1978. In August 1978, petitioner and Bonnie Anne Broome Ward sold the real property located at 1608 Washington St., Edmond, Oklahoma, for $89,000. Sales expenses paid by the Wards were $5,626 and the net proceeds from the sale of the property were $34,076.12. Three-fourths of the net proceeds from the sale of the property, $25,557.09, was paid to Bonnie Anne Broome Ward in accordance with the terms of the divorce decree, and one-fourth of the net proceeds of the sale of the property $8,519.03, was paid to petitioner in accordance with the terms of the divorce decree. Bonnie Anne Broome Ward was represented in the negotiations of the terms of the divorce decree by an attorney. She discussed with her attorney the terms of the divorce decree as they related to the property settlement, alimony and support, and they discussed the taxability of such items to her. Bonnie Anne Broome Ward understood and intended that the difference between three-fourths and *176 one-half of the net proceeds of the sale of the property at 1608 Washington St. would be paid as part of the property settlement and not as alimony, and would not be taxable to her. Petitioner was also represented by an attorney. Petitioner's attorney and Mrs. Ward's attorney negotiated the details of the provisions in the divorce decree. However, petitioner made certain suggestions with respect to the agreement, one of the suggestions being that the house at 1608 Washington St. not be sold before August 2, 1978. The reason petitioner requested the provision that the house not be sold prior to August 2, 1978, was that in his opinion if it had been sold prior to that date, since neither he nor Mrs. Ward would have lived in the house for 18 months, there would have been a capital gain realized under section 1034 since the house had been purchased on February 4, 1977. In 1960, petitioner graduated from Louisiana Polytechnic Institute in Ralston, Louisiana, receiving a B.S. in business administration with an accounting major. Shortly after graduating from college, petitioner began to work for the Internal Revenue Service. Petitioner worked for the Internal Revenue Service for *177 19 years, from June 1960 to May 1979. He worked as an agent, as a group manager and as a large case manager for the Internal Revenue Service. Petitioner is a C.P.A. and at the time of the trial of this case in September 1981 was employed by Coopers and Lybrand as a certified public accountant. Prior to going with Coopers and Lybrand, he worked for Dorchester Gas Co. as a tax manager. Bonnie Anne Broome Ward had been employed as a school teacher at the time she and petitioner were married. Mrs. Ward continued to work after she and petitioner were married. She worked throughout her married life, except that at the time of the birth of each of her four children she ceased to work for approximately 18 months. The contract for sale of the house at 1608 Washington St. was signed by petitioner and Mrs. Ward around July 15, 1978, and the closing of the sale took place on August 18, 1978. Neither petitioner nor Mrs. Ward came from a wealthy family, and neither brought many assets into their marriage. At the time of their divorce, the principal assets owned by them were the residence at 1608 Washington St., Edmond, Oklahoma, and petitioner's interest in his Federal retirement to *178 which he had contributed approximately $19,000. The divorce decree provided that petitioner should be entitled to claim the three eldest children of the parties as dependents for tax purposes, and that Mrs. Ward would be entitled to claim the youngest of the four children as a dependent for tax purposes. It further provided that petitioner should be entitled to claim any deductible item available by reason of payment of principal, interest, taxes and insurance on the mortgage indebtedness or note on the house at 1608 Washington St., Edmond, Oklahoma. Petitioner on his return as filed did not report any capital gain from the sale of the residence at 1608 Washington St., Edmond, Oklahoma. No such capital gain was reported on his amended return as filed. On the original return as filed, petitioner did not claim any portion of the $8,519.03 representing the extra one-fourth of the net gain on the sale of the residence at 1608 Washington St., Edmond, Oklahoma, which went to Mrs. Ward as deductible alimony. [3] On his amended return, he claimed a deduction as heretofore stated of $8,514.66. *179 Respondent in the notice of deficiency increased petitioner's income as reported on his original tax return by $6,971.67. This amount was explained as being one-half of the long-term capital gain on the sale of petitioner's one-half interest in the residence at 1608 Washington St. of $15,282.82 less the long-term capital loss from other transactions reported by petitioner on his tax return as filed. Petitioner in his petition alleged error in respondent's determination of deficiency, stating that the property sold was a capital asset and not petitioner's personal residence. Petitioner further alleged that respondent erred in not allowing a deduction for alimony in the amount of $8,514.66 paid pursuant to the divorce decree. [4]
OPINION *180 Section 215 allows a husband to deduct from gross income amounts paid to his ex-wife during a taxable year which are includable in her income under section 71. Section 71(a) provides that if a wife is divorced or legally separated from her husband under a decree of divorce or separate maintenance, the wife's gross income includes periodic payments received after such decree in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree. As was pointed out in Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion at 511 F.2d 1393 (3d Cir. 1975), the legislative purpose behind sections 71 and 215 is uniformity of treatment of amounts paid in the nature of alimony or in lieu of alimony, regardless of the differences in the laws of the various States. Payments made in recognition of the family or marital obligation for support are deductible, whereas payments which are in the nature of a division of property are capital in nature and not includable in the income of the wife or deductible by the husband. See section 1.71-1(b)(4). Although it *181 is well settled that whether payments are in the nature of support or part of a property settlement agreement does not turn on the label assigned to the payments in the divorce decree or the parties' agreement, it is often a difficult fact question to determine the nature of the payments. See the discussion in Beard v. Commissioner,77 T.C. 1275, 1284 (1981), on appeal (9th Cir., June 15, 1982), and cases there cited. As was pointed out in the Beard case, the extent of a spouse's property rights under State law has often caused difficulty to the courts in determining the nature of a payment made. However, as we stated in Beard, some of the factors to be considered are whether the parties in their agreement intended the payments to effect a division of their assets, whether the recipient of the payment surrendered valuable property rights in exchange for the payment, whether the payments are fixed in amount and not subject to contingencies, and whether the amount of the payments plus other property awarded to the recipient equals approximately one-half of the property *182 accumulated by the parties during their marriage, as well as whether the need of the recipient was taken into account in determining the amount of the payment and whether there are other provisions for support in the decree. Petitioner in this case testified that during the process of negotiations of the divorce, he and Mrs. Ward agreed that one party would take certain items and the other would take other items and that the two principal assets "in the community at this time" were the residence at 1608 Washington St., Edmond, Oklahoma, and petitioner's $19,000 of contributions to the Federal retirement program. Petitioner testified that in the disposition made of the assets Mrs. Ward received approximately $8,000 in household furniture, $2,000 in jewelry and another $3,000 in silver and china. Petitioner stated that "This was in relinquishment for her property right to my interest in my Federal Retirement." He further testified that-- Then we came to the subject of the house. We agreed we would both continue to own the house. I would make the payments on the house. I had four children to provide a place to live and so I continued to make the payments on the house.
In the *183 event that the property was sold, out of my one-half interest, I would pay her as an obligation for the family support one half of the proceeds. My intent there being that she would have to find a place for five people to live, which she would need more money and I would only have to find a place for myself. If we accept petitioner's testimony as to his intent with respect to the payment of the $8,519.03, the record would show that his intent and Mrs. Ward's intent were directly opposite. However, based on a consideration of the record as a whole, we do not believe that petitioner's intent at the time of the entry of the divorce decree was that the payment of the $8,519.03 to Mrs. Ward was for her support rather than to equalize the division of their property. The evidence shows that during much of their married life petitioner and Mrs. Ward lived in Louisiana, a community property State. Their divorce was obtained in Oklahoma. In Oklahoma, each spouse has an interest in the assets acquired during marriage when the parties are divorced, even though only one has been gainfully employed. *184 See Collins v. Oklahoma Tax Commission,446 P.2d 290 (Okla. 1968); Collins v. Commissioner,46 T.C. 461, 471, 473 (1966), affd. 388 F.2d 353 (10th Cir. 1968), vacated and remanded to the Tenth Circuit 393 U.S. 215 (1968), reversed and remanded 412 F.2d 211 (10th Cir. 1969). In listing or estimating the value of the household furnishings and china and silver and jewelry received by Mrs. Ward, petitioner overlooked the fact that he received in the settlement certain household furnishings and the amounts held in accounts jointly with Mrs. Ward, income tax refunds, all of the bonds held jointly by the parties, all of the cash proceeds of insurance policies and all of the stock owned by the parties, as well as his interest in his retirement benefits. Insofar as this record shows, the household goods which were awarded to petitioner, which he had in his possession, and the stock and bonds and insurance policies, might well be in excess of the household goods, including the silver, awarded to Mrs. Ward. Both parties were awarded their own personal items and effects, and there is nothing in this record to show *185 that such items awarded to Mrs. Ward were of greater value than those awarded to Mr. Ward. The fact that the two major items were approximately equally divided by granting to Mrs. Ward three-fourths of the net gain from the house warrants an inference that other items awarded to each party were of approximately the same value. The record here does not show how much of the property held by petitioner and Mrs. Ward was acquired while they lived in Louisiana, a community property State. It does show that neither had many assets at the time of their marriage.However, it is clear that under Oklahoma law each party acquires rights in property acquired during marriage very similar to the concept of community property, and that the division of jointly acquired property made by a court in case of a divorce is not on the basis of the obligation of a husband to provide for his wife and children but rather is in recognition of the fact that each has contributed to the acquisition of the property during the marriage. The record here shows that Mrs. Ward worked during most of her married life. However, *186 the rights in property acquired during marriage under Oklahoma law are not dependent on whether the wife has worked outside the home or has been engaged solely in being a homemaker. Collins v. Oklahoma Tax Commission,supra.The facts in this case clearly indicate that the $8,519.03 was to be paid to Mrs. Ward as part of a division of the property of the parties. In view of the other evidence of record, we do not believe that petitioner's intent at the time the divorce decree was entered was other than that the $8,519.03 was part of a division of the property of the parties.However, even if petitioner had a different intent, this fact would not necessarily to controlling. See Schottenstein v. Commissioner,75 T.C. 451, 460 (1980). Here, Mrs. Ward had tangible property rights that she exchanged for the $8,519.03. Other provisions of the divorce decree provided for alimony and for child support. The divorce decree was negotiated by attorneys dealing at arm's length. It is stipulated in the record that Mrs. Ward intended the $8,519.03 to be part of a property settlement not taxable to her and was advised by her attorney that this was the *187 fact. The evidence here is so clear that the $8,519.03 was part of a property settlement agreement between petitioner and Mrs. Ward that we do not reach respondent's other argument that the payment was not periodic. [4]
We do not understand the nature of petitioner's argument with respect to the gain on the sale of the house. Petitioner's basis in the house is stipulated, assuming he has a one-half interest in it. Petitioner does not deny that he had a one-half *188 interest in the house when it was purchased. The divorce decree specifically provided that title to the property shall remain in joint tenancy as it is on the date of issuance of the decree until sold or transferred. Clearly, under the divorce decree petitioner had a one-half joint interest in the house. While petitioner does not contend that he did not have a one-half joint interest in the house on the date of the entry of the divorce decree, he argues that because he was required to turn over one-half of what otherwise would have been his receipt from the sale of the house to Mrs. Ward, he had a loss from the sale.Petitioner does not explain how he could have a one-half interest in the house for the purpose of basis and only a one-quarter interest for the purpose of receipt from the sale of the house. The only facts we have with respect to this issue are the stipulated facts. From the stipulated facts, we conclude that petitioner owned a one-half interest in the house when it was sold and constructively received one-half of the gain on the sale of the house. Petitioner does not argue that paragraph IV of the divorce decree awarded a three-fourths interest in the house to Mrs. *189 Ward and a one-fourth interest to him. Apparently he takes the position that he in effect paid the $8,519.03 to Mrs. Ward when the house was sold for the reason that in his view this fact would support his claim to an alimony deduction for the amount. We have concluded that one-half of petitioner's one-half received from the sale was paid over to Mrs. Ward to compensate for other property owned by the parties but awarded to petitioner so as to equalize the division of their property. In effect this was the method by which petitioner was required to pay Mrs. Ward some $8,000-plus to equalize the division of property between them. There is nothing in this record to show that the intent of the divorce decree was to grant a three-quarters interest in the house to Mrs. Ward rather than to have Mr. Ward in effect raise about $8,000 from the sale of the house to pay over to her. The indication is to the contrary. In no event could petitioner have one-half of the basis in the house but only one-quarter of its beneficial ownership. See Carrieres v. Commissioner,64 T.C. 959, 964 (1975), affd. 552 F.2d 1350 (9th Cir. 1977). On the basis of this record, *190 we sustain respondent's determination that petitioner received a capital gain computed on the basis that he constructively received one-half of the net proceeds from the sale of the house in which he owned a one-half interest at the time it was sold. Decision will be entered for the respondent.
Footnotes
1. The parties, in their stipulation, inadvertently stated this figure to be $69,090; however, the Form 2119 attached to the 1977 return shows the cost of the new residence to be $69,500 and that $69,090 was the amount realized from the sale of the old residence. ↩
2. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
3. On this return petitioner claimed a deduction for alimony of $4,960, which is not in issue in this case.↩
4. Petitioner in his petition also alleged error in respondent's computation of base period income as shown in the notice of deficiency which was used for the purposes of computing petitioner's tax under the income averaging method. However, on brief petitioner stated that he conceded that respondent's computation of base period income was correct, so this item is no longer in issue.↩
4. Petitioner relies on Swendseen v. Commissioner,T.C. Memo. 1978-501, in which we held that the first of several payments to be made from 10 percent of the proceeds of the sale of various pieces of real estate was, under the facts there present, a periodic payment in the nature of alimony. The facts in that case are totally different from the facts in the instant case. In that case we pointed out that it is well settled that payments made in satisfaction of property rights are capital in nature and neither includable in gross income under sec. 71 nor deductible under sec. 215. The facts in the Swendseen↩ case are so different from those in the instant case as to warrant no further comment.